## TUSH-HO-YO-TUBBY *v.* JACOB BARR.

1. ADVERSE POSSESSION — PRESUMPTION FROM LAPSE OF TIME — STATUTE OF LIMITATIONS. — It would be error to instruct a jury in an action of ejectment that "presumptions of law from lapse of time, coupled with possession, in favor of the existence of a deed or other muniment of title, or right of possession, are weaker and less conclusive against a plaintiff in ejectment than the statute of limitations."

2. NO PRESUMPTION OF TITLE FROM ADVERSE POSSESSION SHORT OF TIME PRESCRIBED BY STATUTE OF LIMITATIONS. — No presumption of title from adverse possession, for a period however long, short of that prescribed by the statute of limitations, can be indulged in an action of ejectment to supply a defective title to land.

3. STATUTE OF LIMITATIONS — RESIDENCE IN THE INDIAN TERRITORY NOT A RESIDENCE WITHOUT THE LIMITS OF THE UNITED STATES WITHIN THE MEANING OF THE ACT. — A continued residence of the plaintiff in an action of ejectment for land, since the year 1838, in the Indian territory, west of the state of Arkansas, is not such absence without the limits of the United States as will prevent the bar of the statute of limitations from attaching to the action.

4. LIMITS OF UNITED STATES — THE INDIAN TERRITORY. — The Indian territory west of the state of Arkansas is not "without the limits of the United States."

5. NEW TRIAL — ERROR — VERDICT. — Notwithstanding the misdirection of the court in giving the sixth instruction asked for the defendant the verdict is right and a correct result having already been attained, a new trial would be superfluous. In applications of this kind a main object of inquiry is the verdict; for if that be correct, there is nothing to be relieved against.

ERROR to the circuit court of Chickasaw county. BRADFORD, J.

The facts appear in the opinion of the court.

*C. D. & J. D. Fontaine,* for plaintiff in error.

*James Phelan,* for defendant in error.

The counsel on both sides filed lengthy written arguments, too long for insertion, and too complete and elaborate for any successful attempt at abbreviation by the reporter, therefore they are omitted.

PEYTON, C. J.:

This was an action of ejectment, brought by Tush-ho-yo-tubby to the November term, 1858, of the circuit court of Chickasaw county, against Jacob Barr, to recover the possession of one hundred and sixty acres of land situated in said county.

The declaration alleges, that the plaintiff's right to the possession accrued on the 6th day of February, 1836, by virtue of a located reservation secured to him by the treaty of the United States with the Chickasaw Indians, of whom he was one ; and that, in the year 1838, he left the said land unoccupied, and has been ever since beyond the limits of the United States, in the territory known as the Indian territory, west of the Mississippi river, state of Arkansas, and east of the Rocky mountains.

To this action, the defendant appeared, and pleaded not guilty. And upon the issue joined upon this plea, the cause was submitted to a jury, who found a verdict for the defendant. Whereupon the plaintiff made a motion for a new trial, on the ground that the verdict was against the law and the evidence, which was overruled by the court, and judgment entered for the defendant. And from this judgment the defendant prosecutes this writ of error, and makes the following assignments of error :

1. The circuit court erred in refusing to give the eleventh and in modifying the twelfth instruction asked by the plaintiff.

2. The said circuit court erred in giving the sixth instruction asked by the defendant.

3. The said circuit court erred in overruling the plaintiff's motion for a new trial.

Upon the trial of this cause in the court below, it was admitted by both parties, that the defendant was in the actual possession and occupancy of the land sued for at the issuance of the writ in this case, and has continued in possession to the present time.  Also, that the plaintiff is a Chickasaw Indian, who removed with his tribe from this country to the Indian territory west of Arkansas in 1838, and has continued there to this time.  It was also admitted that said land was sold by one Love, a Chickasaw chief, to Colbert Moore, by deed dated March 6, 1839 ; that said Moore sold the same to Brahan and Patton, May 18, 1840 ; and that said deeds were duly recorded in the proper office of Chickasaw county.

A deed from Robert W. Brahan and wife, conveying the land in controversy to the defendant, dated the 26th day of April, 1848, was read in evidence to the jury on the part of the defendant, who then testified, that he had been in the actual, open and notorious possession and occupancy of the same from January, 1847, to the present time, paying taxes thereon, and claiming title to the same against all the world.  And this was corroborated by Caradine, a witness for the plaintiff, who testified that the defendant went into possession of the land in contest about January, 1847, and that he had been in the actual, open, public and notorious possession of the same ever since that time, claiming the same as his own property against the claims of all others.

The evidence on the part of the plaintiff clearly establishes his right to the land at the time of his removal to the Indian territory, west of the Mississippi, and, unless his action be barred by the statute of limitations, he should recover in this suit.

The first assignment of error impeaches the correctness of the action of the court below in refusing to give the eleventh instruction, asked by the plaintiff, which is as follows: "Presumptions of law from lapse of time, coupled with

possession, in favor of the existence of a deed, or other muniment of title or right of possession, are weaker and less conclusive against a plaintiff in ejectment than the statute of limitations ; and such presumption cannot arise from an adverse possession of land for a shorter period of time than constitutes a bar to the suit for its recovery under the statute of limitations."

It is undoubtedly true, that the title to lands by adverse enjoyment, owes its origin to and is predicated upon the statute of limitations, and although the statute does not profess to take an estate from one man and give it to another, it extinguishes the claim of the former owner, and quiets the possession of the actual occupant, who proves that he has actually occupied the premises under claim or color of title, peaceably and quietly for the period prescribed by law.

The question of adverse possession of real property is inseparably connected with that of the statute of limitations, because, if there were no statute limiting the right of entry upon, or of bringing the action for the recovery of, real property, there would never be a necessity for scrutinizing the possession to learn whether such possession be adverse or not.   Possession is in law *prima facie* evidence of legal title ; but if it actually appear that the title to the property is in a person out of possession, except for the statute of limitations, the possession of such property would avail nothing.

The subject of the adverse enjoyment of real estate has always been one of considerable interest ; but especially in this country, with its immense territory, and the commercial and manufacturing habits of its population, the subject has become one of very great importance, and one which has elicited much legal discussion and judicial decision.   In some instances the statutes of the state expressly declare what shall constitute an adverse possession of lands, while in others it is expressly enacted that an uninterrupted possession of the property for the limited length of time

shall itself constitute a complete title. However this may be, it is all the same to the person in the adverse enjoyment; for, if he cannot be disturbed in his possession, it is wholly a matter of indifference to him whether he is sustained in his claims, because the law vests the title in him, or whether the true owner of the property is estopped from asserting the actual title.

As a general rule, it may be affirmed that quiet and peaceable possession of real property is *prima facie* evidence of the highest estate in the property, that is to say, a seizin in fee; and if such possession is continued without interruption the whole period prescribed by the statute of limitations, the evidence becomes positive and conclusive; but in order that it have this latter effect, the possession must be adverse. Whenever the statute declares what shall constitute the possession adverse, the question is settled by reference to the statute, and the decisions of the courts that have been made under it. But when the statute is silent upon the subject, the question is settled by general principles, which have been sanctioned and established by the courts. The law deems every man to be in the legal seizin and possession of land to which he has a perfect and complete title; this seizin and possession is co-extensive with his right, and continues till he is ousted thereof by an actual adverse possession. This is a settled principle of the common law, repeatedly recognized and adopted by the courts of this country, and is not now to be questioned. Green v. Later, 8 Cranch, 229; Barr v. Gratz, 4 Wheat. 213, 233; Propagation Society v. Pawlett, 4 Pet. 480; and Clark v. Courtney, 5 ib. 354. Every person in the actual possession of lands is presumed to be in the possession as the owner of the title or in subordination to the title of the true owner. The fact of possession *per se*, therefore, however long it may have endured, does not establish the title. It is not the possession alone which bars the true owner, but that possession must be adverse. The statutes of limitation have, with great propriety, been termed statutes of

repose.   The books require color of title by deed or other documentary semblance of right in the defendant, only where the defense is founded on a constructive adverse possession.   But neither a deed nor any equivalent muniment is necessary where possession is indicated by actual occupation, and any other evidence of an adverse claim exists.   The muniment is but one circumstance by which to make out an adverse possession.   An oral claim of exclusive title, or any other circumstances by which the absolute owner of land is distinguished from the naked possessor, are equally admissible, and may be equally satisfactory.   And no one who has reflected upon the subject, and whose observation and experience qualify him to judge, but will sanction and applaud the wisdom and policy of a statute, the object and obvious tendency of which is to promote the peace and good order of society by quieting possessions and estates and avoiding litigation.

With respect to the first assignment of error, it is difficult to perceive why presumptions of law in favor of title to land, founded on adverse possession, should be regarded as weaker and less conclusive than the statute of limitations, inasmuch as these presumptions arise from and are predicated upon that statute.   Neither can establish title to lands and tenements, unless there is an adverse possession for the period prescribed by the statute of limitations.   It is conceded to be different with regard to incorporeal things. Greenleaf says, "In regard to the effect of possession alone for a period of time, unaccompanied by other evidence, as affording a presumption of title, a difference is introduced by reason of the statute of limitations between corporeal subjects such as lands and tenants, and things incorporeal, and it has been held that a grant of lands conferring an entire title cannot be presumed from mere possession alone from any length of time short of that prescribed by the statute of limitations.   The reason is, that with respect to corporeal hereditaments, the statute has made all the provisions which the law deems necessary for quieting possessions, and

has thereby taken these cases out of the operation of the common law." 1 Greenl. Ev. 23, § 17. The latter clause of the instruction was right, but being connected with that which was wrong, the court did not err in refusing the instruction as asked.

The second assignment imputes error in giving the sixth instruction asked by the defendant which is as follows: "Presumptions from adverse possession for a long lapse of time may be looked to, to supply a defective title to land." This instruction is is too indefinite and therefore erroneous. No presumption of title as before remarked, from adverse possession for a period, however long, short of that prescribed by the statute of limitations, can be indulged in an action of ejectment to supply a defective title to land.

This brings us to the last assignment of error which questions the correctness of the action of the court in overruling the motion of the plaintiff for a new trial, and this involves the consideration of the interesting and important question, whether a continued residence of the plaintiff since the year 1838, in the Indian territory west of the state of Arkansas, is such absence without the limits of the United States, as will prevent the bar of the statute of limitations from attaching to this action. If the bar attaches, it inures equally to the benefit of the defendant, whether he claims that the title to land in controversy vests in him by ten years adverse possession, or that the plaintiff's right of entry is taken away by lapse of time under the statute of limitations of 1844.

Whether the Indian territory west of the state of Arkansas is without the limits of the United States has been very properly regarded by counsel as the main question in the cause, and upon which our decision must depend.

The views of counsel in this case have been presented with learning and ability. Nevertheless, the case seems to us without difficulty in its determination, and to require no very elaborate argument to vindicate the soundness of the conclusion at which we have arrived.

The European nations, which respectively established colonies in America, assumed the ultimate dominion to be in themselves, and claimed the exclusive right to grant a title to the soil, subject only to the Indian right of occupancy. The natives were admitted to be the rightful occupants of the soil, with a legal as well as a just claim to retain possession of it and to use it according to their own discretion, though not to dispose of the soil at their own will, except to the government claiming the right of preemption. And this right of pre-emption was claimed on the ground of prior discovery. The discovery of this continent was considered to have given to the government, by whose subjects or authority it was made, a title to the country and the sole right of acquiring the soil from the natives, as against all other European powers. The rights of the British government within the limits of the British colonies passed to the United States by force and effect of the act of independence. The rule that the Indian title was subordinate to the absolute ultimate title of the government of the European colonists, and that the Indians were to be considered as occupants, and entitled to protection in peace in that character only, and incapable of transferring their rights to others, was the best one that could be adopted in safety. The weak and helpless condition of the Indians, and the great superiority of their civilized neighbors, would not admit of the application of any more liberal and equal doctrine to the case of Indian lands and contracts. It was founded on the pretension of converting the discovery of the country into a conquest.

This is the view taken of this subject by the supreme court of the United States in the cases of Mitchel v. United States, 9 Pet. 711, 746 ; Worcester v. State of Georgia, 6 ib. 515 ; and Cherokee Nation v. The State of Georgia, 5 ib. 1. This doctrine has ever prevailed in this country. The Indians have a kind of nondescript title, which can be extinguished only by purchase.

The purchase is regulated by treaty, prior to which the

Indians are entitled to be protected in their possession. But the fee simple in the soil, and the right of pre-emption belong to the federal government. The Indians can sell neither to states nor to individuals. And this principle is now extended to all their commerce, traffic and intercourse, which are wholly under the control of the federal government. In fact, the Indian tribes are domestic and dependent nations, sustaining toward the federal government a relation analogous to that of ward to his guardian, and thence denominated a state of pupilage. They are not foreign nations in the sense in which these words are used in the constitution, but are, nevertheless, distinct political societies, capable of governing themselves, and of being parties to treaties. In short, they are neither wholly separated from us, nor yet a part of us. They are neither citizens nor aliens, but sustain an anomalous relation somewhere between the two.

The character of the Indian territory, under consideration, came into discussion in the case of The United States v. Rogers, 4 How. (U. S.) 567, and it was adjudged that this Indian territory is within the territorial limits of the United States, and that the Indian tribes residing therein were subject to their authority, and congress may by law punish offenses committed there, whether the offender be a white man or an Indian. In Mackey v. Coxe, 18 How. (U. S.) 103, it was held, that the Cherokee country was a territory of the United States; and in the case of the Cherokee tobacco, 11 Wall. (S. C. R.) 616 it was decided that the internal revenue laws, imposing taxes on distilled spirits, fermented liquors, tobacco, snuff and cigars, shall be construed to extend to such articles produced anywhere within the exterior boundaries of the United States, whether the same shall be within a collection district or not, applies to and is in force in this Indian territory, as being within the limits of the United States.

These authorities leave no doubt that the Indian territory, in which the plaintiff resides, was and is within the limits of

the United States, and that the plaintiff, therefore, is not within the saving clause of the statute of limitations of 1844, which governs this case.

The record shows that the writ of summons in this case was issued on the 25th day of October, 1858, and was served on the defendant on the 3d day of November following. And the testimony establishes the fact that the defendant was in the actual adverse possession of the land in controversy from January, 1847, to the commencement of this suit. From which it will appear that the defendant was in the actual adverse possession of the land in contest under claim and color of title for a period of more than ten years before the commencement of this suit, which constitutes a complete bar to this action.

Notwithstanding the misdirection of the court in giving the sixth instruction asked by the defendant, the verdict is right, and a correct result having already been attained, a new trial would be superfluous. In applications of this kind, therefore, a main subject of inquiry is as to the verdict, for if that be correct there is nothing to be relieved against.

We therefore think the court below did not err in refusing to grant a new trial.

For these reasons the judgment must be affirmed.