ANN A. GLADNEY et al. VS. H. M. BARTON et al.

1. CONVEYANCE: *Parol agreement: Statute of limitation: Cloud upon title.*
A parol agreement between a vendor and vendee, whereby the title is temporarily conveyed to a stranger, to be by him surrendered on certain conditions, to the vendee and heirs, for twenty years, and a compliance with the terms of the agreement, constituted an equity, for which relief will be granted as against the outstanding title. Entry under such an agreement is under "claim of right," and the possession adverse, which if continued for the period of the statute of limitations, entitles the heirs of the vendee as "true owners," to have the outstanding legal title surrendered as a cloud.

2. SAME: *Case in judgment.*
T. sold to D. a tract of land, and gave bond for title. D. being unable to make his payment sold to A. B., who agreed to pay T., and further agreed to extend to D. for a certain time the right to repurchase. A. B. being involved, the title was conveyed to his brother, W. B., to be held by him during D.'s right to repurchase. D. failed to repurchase, and W. B. then delivered the deed to A. B., whose heirs held adversely about twenty years. They now seek to have the legal title outstanding in the heirs of W. B. surrendered and conveyed to them: *Held*, that the claim of the heirs of A. B. had ripened into a good legal title by lapse of time, and that they were entitled to relief.

APPEAL from the Chancery Court of *Chickasaw* County.

Hon. W. D. FRAZEE, Chancellor.

The bill charges that the complainant, Ann A. Gladney, is the only child of Absalom Barton, deceased, J. B. Gladney is her husband, and Martha Barton is her mother. That Absalom Bar-

ton died intestate, leaving property, real and personal; that letters of administration were granted to Martha Barton; that the personalty is sufficient to pay the debts; that Wm. Barton, brother of Absalom, never married, died intestate, and letters were granted to Frank Burkett. That Absalom in his lifetime purchased the northwest quarter of section 22, town 13, range 3 east, from John Davis, who had purchased it from one Thornton. Davis gave to Thornton his notes for the land, and took from Thornton a bond for title. Davis failed to pay and sold it to Absalom Barton, he promising to pay Thornton and give Davis time to pay him; then the land to be conveyed to Davis. Absalom Barton owed some debts which might be reduced to judgment pending Davis' right to redeem, and for that reason, at the request of Davis, the deed was made by Thornton to Wm. Barton (who was unembarrassed), to be held for Davis in the event he could repurchase. Davis failed to repurchase, and the purchase of Absalom Barton became absolute. Wm. Barton turned over the deed to Absalom, who took possession of the land, made valuable improvements on it, and occupied it until his death (William having died first). William died holding the naked legal title, and Absalom died holding all the equities. The bill prays for a cancellation of the deed, or that the title be conveyed, and for general relief. On demurrer the bill was dismissed, and the case comes to this court on appeal.

The following error is assigned: " The court below erred in rendering its final decree in this cause, sustaining defendant's demurrer to complainant's bill, and dismissing the bill."

*Martin & Bates*, for appellants:

The demurrer admits the charges in the bill, that Absalom paid for the land, and that the deed was made to Wm. Barton for the reasons stated in the bill, and that it could work no prejudice to any one. The time expired for which Wm. Barton was to hold the title for Davis. This failure made the title of Absalom complete and absolute. Wm. Barton never paid for the land, nor claimed to be owner of it. Equitable estates are rights or inter-

ests in lands which, not having the properties of legal estates, courts of equity will make available. Bouv. Law Dic., vol. 1, p. 472. The trust is expressly excepted out of the statute of frauds. Code 1871, § 2896. It results by implication of law, out of conveyance of land, and freed from the operations of the statute of frauds. 4 Kent, pp. 305–6. No writing is necessary to create a resulting trust. Id.; Story's Eq. Jur., § 1201 ; Harvey v. Ledbetter, 48 Miss., 95 ; Wilson v. Beauchamp, 44 id., 556–7–8 to 570 ; Anding v. Davis, 38 id., 574, 590 to 599. The bill is not multifarious. Story's Eq. Jur., p. 299. We cite in support of the case made by the bill, 24 Miss., 131 ; 27 id., 155 ; 30 id., 472 ; 31 id., 653 ; 1 How., 358 ; 7 id., 181 ; 7 S. & M., 219 ; 31 Miss., 426.

*McIntosh & Houston*, for appellees :

The bill charges that the land was conveyed to Wm. Barton because Absalom was in debt and feared that they might be reduced to judgments. The conveyance was fraudulent, and a court of equity will not relieve. Watt v. Conger, 13 S. & M., 412 ; Lawrence v. Hand, 23 Miss., 103. The bill discloses the fraud. The bill seeks to recover on an express trust, by virtue of an agreement between Absalom and Wm. Barton and John Davis, thus preventing any trust by implication, and yet fails to allege the existence of any writing. 1 Sanders on Uses and Trusts, 352; Roberts on Frauds, p. 99 ; Gibson v. Foote, 40 Miss., 788. The bill fails to show that Absalom Barton held exclusive possession, but on the contrary that Wm. Barton resided on the land from the date of the purchase to his decease, a year or two since. It is said that John Davis demanded that the title should be made to Wm. Barton for his protection. It is only shown that Absalom consented to it for the protection of Davis.

SIMRALL, J., delivered the opinion of the court.

John Davis purchased from Thornton a quarter section of land, gave his notes for the consideration money, and took bond for title. Davis, being unable to pay, sold to Absalom Barton, on the agreement that Barton should pay Thornton, but with the

right reserved to Davis to repurchase within a limited time by refunding the money; the conveyance, however, was to be made to William Barton, the brother of Absalom, the title to be held by him pending Davis' privilege to repurchase. Davis failed to buy back the land. William Barton then delivered the deed he had received from Thornton to his brother Absalom, who has, for about twenty years, held adverse possession, claiming and enjoying the property exclusively, has paid the taxes and made valuable improvements. William and Absalom have both departed this life. The former was never married; his heirs are his brothers and sisters and their descendants. The complainants are the widow and heir of Absalom, who bring this bill in chancery against the heirs of William, to cancel the deed made by Thornton to William, or to divest the title thereby conveyed, and for general relief. On demurrer of some of the defendants the bill was dismissed, and the complainants have appealed.

After the deed was delivered to Absalom Barton under the parol agreement, he continued in adverse occupancy and possession (paying taxes and making valuable improvements) for about twenty years before his death. This case is very much like that of Jones *v.* McDougal, 32 Miss., 179, which was said not to be within the statute of frauds. If, upon the facts stated by the complainants, the case is not within the statute of frauds, there is no difficulty in the way of granting relief. For the complainants allege that Absalom Barton, through whom they claim as widow and heir, was in the adverse possession and enjoyment of the lands for about twenty years prior to his death, referring his right so to do to his purchase from Davis, and the agreement with him and his brother William.

Possession of lands is presumption of ownership, or of a holding in subordination to the title of the true owner. Possession *per se*, however long continued, does not establish the title, for, unless explained, it is supposed to be in subordination to the right. Cholmondeley *v.* Clinton, 2 Jac. & Walk., 1.

Adverse possession, if open, notorious, under claim or color of

right, may, by lapse of time, ripen into a good legal title. This occurs where the right of entry of the rightful owner has been tolled and cut off by the statute of limitations. Huntington v. Allen, 44 Miss., 667. To constitute the foundation of such possession, the entry must be accompanied by a claim of title. Ewing v. Burnet, 11 Pet., 41, 51 ; Green v. Lessee of Neal, 6 id., 291. It does not matter how defective the claim or color may be if that is the right under which the disseizin is made, and the possession is hostile to the real owner, he must assert his title by entry or by action in due time, or his right will be forever defeated. The entry may be made under color of parol as well as written contract. It seems to be concluded by authority that such possession under color of right, for the length of time required by statute, will toll an entry.

When the statute may be relied on as defense, the idea of right is excluded. Jackson v. Wheat, 18 Johns., 44; Smith v. Lockwood, 10 id., 366; Jackson v. Ellis, 13 id., 120; Jackson v. Hill, 5 Wend., 532.

It would follow, therefore, from these principles, that Absalom Barton had acquired a right by adverse possession to the quarter section of land in question against William Barton and his heirs, grounded upon his entry with a claim of title, although he might fail on account of the statute of frands to establish the trust. The complainants allege that Absalom Barton purchased from Davis his equitable title, and took an assignment of the title bond, on the agreement, however, that Davis should have the privilege of repurchase if he could raise the money within a limited time. The deed was made to William Barton, because Absalom was, at the time, indebted, and his creditors might embarrass Davis' right to repurchase if the conveyance were made to Absalom. These creditors have been paid off. Davis failed to raise the money in time, and has abandoned his privilege to repurchase; but William became the depository of the legal title in these circumstances, holding the same in the confidence and for the benefit of his brother, never having advanced any part of the purchase money.

In the case of Jones *v.* McDougal, 32 Miss., 179, the complainant purchased the land and took a bond for title. Fearing he could not make his payments, he entered into an arrangement with Jones, by which Jones was to pay off his notes, receive a deed from Craft, and execute a bond to the complainant on payment of the money and interest. This was held to be a contract not affected by the statute of frauds.

William Barton was not the real purchaser; he seems to have been entirely passive; he advanced no money and incurred no obligation for it; he became the recipient of the legal title as a mere volunteer, from Thornton, without consideration or negotiation with him. The title was not placed in him as a scheme and device to defraud the creditors of Absalom, but so that his creditors might not impede and harass a resale to Davis, under the agreement with him. When that agreement became of more effect, then William held as trustee for Absalom. Such is the equitable view of the origin of Absalom's right. When that right has matured by the long assertion of it, and the uninterrupted enjoyment of the property under it, so long as to have acquired the dignity and strength of legal right, we think the complainants come into a court of equity with such perfect right, that they may well insist that the naked, unmeritorious deed from Thornton to William Barton should be surrendered as a cloud on their title.

If the complainants stood alone upon the original equity of Absalom Barton, they might be embarrassed by the statute of frauds. But that equity, by long possession and enjoyment, has grown and expanded into a legal right, and to them is of the value of legal title.

Presenting such merits, we do not think that they should be turned away from a court of equity, but should have relief against defendants, who claim under a mere volunteer deed.

Decree reversed. Demurrer overruled, and leave given defendants to answer in forty days.