JOSHUA GREEN v. A. MIZELLE ET AL.

1. LIMITATION OF ACTIONS. *Adverse possession. Equitable mortgage.*
   Where, on rescinding a sale of land, the vendor borrows part of the
   money repaid to the vendee, from a third person, to whom, as secur-
   ity therefor, an absolute deed of the land is made from the vendee,
   the relation of equitable mortgagor and mortgagee exists between the
   vendor and such third person; and if the former is in possession, the
   Statute of Limitations will run against the latter, the rules applicable
   to a regular mortgage aiding by analogy in the solution of the ques-
   tion of limitation.

2. SAME. *Purchaser of equitable mortgage at execution sale.*
   The legal title passes by execution sale against such third person subject
   to the vendor's equity; but such title, if not asserted for thirty-five
   years after the execution of the deed, will be barred in the hands of
   vendees from the execution purchaser's heirs.

3. SAME. *Character of possession. Admission by possessor.*
   An admission by such vendor in possession that the family of the third
   person had the property or would have it, must be considered with
   reference to the attendant circumstances and the time; and if deposed
   to by the plaintiff as made twenty-five years before, when such ven-
   dor also claimed for his improvements, should be construed to refer
   only to the equitable mortgage.

4. SAME. *Devise of the land by equitable mortgagor. Hostile assertion of
   title.*
   If such vendor should make a will mentioning specifically said land, and
   devising it, this would be an assertion of ownership adverse to the
   third party, and the vendor's executor being in possession, the statute
   would begin to run from the probate of the will. *Kohlheim* v. *Harri-
   son,* 34 Miss. 457, cited; and while a devise of all his property, real,
   personal and mixed, is not so forcible, it amounts to a declaration
   that such vendor has real estate, which, in the absence of evidence of
   other property to which the devise could apply, is a circumstance to
   be considered on the question of the adverse character of the pos-
   session.

5. SAME. *Mortgagor and mortgagee. Adverse possession.*
   The doctrine of adverse and permissive possession and color of title
   stated and applied to the relation of mortgagor and mortgagee, which
   is also discussed, the authorities cited, principles announced, and
   statutory changes noted.

6. WITNESSES. *Competency of party. Estate of deceased person. Mean-
ing of the words in* § 758, *Code* 1871.

As to the competency of a party to testify to establish his own claim
of any amount against the estate of a deceased person, which origi-
nated during the lifetime of such decedent, the court adheres to the
interpretation put upon § 758, Code 1871, in the case of *Jacks* v.
*Bridewell,* 51 Miss. 881.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

*Shelton & Shelton,* for the plaintiff in error.

1. The interrogatories and Mizelle's statements elicited by
them were incompetent. The object was to show by Wilson's
pretended admission that he held under Long, and not in his
own right. To show this, Mizelle was proving his own case
against Wilson's executor, by detailing a pretended conversa-
tion with Wilson in his lifetime. *Jacks* v. *Bridewell,* 51 Miss.
881.

2. On the merits of the case there can be no doubt that the
defendant was entitled to judgment.

(1.) As to occupancy and possession. Wilson and his
family occupied the premises during his life. He left them in
possession at his death. And up to this date, his executor
has controlled the property under the will, for the use of
Charlotte Cobb and Wilson's children. No one has ever been·
in possession under Long's title for· thirty-four years.

(2.) Whether we regard Collins's deed to Long as absolute,
or the transaction as an equitable security to Long, the limi-
tation equally applies. Hutch. Code, p. 824, §§ 1–3; p. 832,
§ 17. The statute, having begun to run, was not stopped by
Mrs. Long's marriage. 30 Miss. 49; 10 S. & M. 100; 4 How.
38; 12 S. & M. 27; Angell on Limitations, 196, 477, 479.
The infancy of the heirs cannot be counted, because one dis-
ability cannot be tacked on to another. Hutch. Code, p. 832,
§ 17; 37 Miss. 17; 23 Miss. 133; 12 S. & M. 58; Angell on
Limitations, 196, 477, 479.

(3.) The possession was adverse. 37 Miss. 149; 35 Miss.
502; 41 Miss. 52; 28 Miss. 140; 44 Miss. 668; 38 Miss. 415;
Angell on Limitations, § 398. It has been continuous. 35
Miss. 490, 506. And with color or claim of title. 35 Miss.

591; 45 Miss. 193; 34 Miss. 458. Clearly the plaintiffs are barred, and cannot successfully assert right to the land. 12 S. & M. 27; 8 S. & M. 234; 28 Miss. 431; 1 Greenl. Evid. § 46.

*D. Shelton,* on the same side, made an oral argument.

*W. P. Harris* and *Frank Johnston,* for the defendants in error, each argued the case orally.

*Harris & George* and *Frank Johnston,* on the same side, filed an elaborate brief to show that Mizelle was competent as a witness, and to overturn *Jacks* v. *Bridewell,* 51 Miss. 881, so far as that case attempts to define " estate of a deceased person " as meaning land descended and in the condition of the land in controversy.

1. They cited and commented on 5 Abb. N. Y. Dig. p. 435; Code 1857, art. 190, p. 510; Code 1871, § 758; *Griffin* v. *Lower,* 37 Miss. 458; 39 Miss. 342; *Faler* v. *Jordan,* 44 Miss. 283; *Witherspoon* v. *Blewett,* 47 Miss. 570; *Wood* v. *Stafford,* 50 Miss. 370; Story Eq. Pl. § 196.

2. Wilson's possession, they contended, was permissive. He never professed to have title. He knew it was out of him, and consented to place it or keep it out of himself. Of such possession the authorities say that time has no influence to ripen it into title or create a bar. *Whaley* v. *Whaley,* 1 Speers (S. C.), 225; *Moore* v. *Johnston,* 2 Speers, 288; Angell on Limitations, 377.

3. The declaration of Wilson, the party in possession, is one of the most conclusive facts as to the character of his possession; that is, whether under a claim of right or in subordination to the party holding title. This evidence alone is sufficient to destroy the defence founded on the Statute of Limitations. It is a disavowal of claim to the lot.

4. A party cannot resist a legal title by means of an equitable one, however well established. A sale of land in the adverse possession of another is allowable. *Cassedy* v. *Jackson,* 45 Miss. 397; *Tush-ho-yo-tubby* v. *Barr,* 45 Miss. 189.

5. Green, when he took out letters, sustained the characters of executor and devisee in trust. They are distinct. In the one, he was the legal representative of the estate; in the other, a devisee in trust, representing the *cestuis que trust.*

After more than a quarter of a century, with all claims against the estate extinct, his functions as executor have ceased. It is idle to pretend that he can act in that character. The only remaining beneficiary has been of age sixteen years. He represents her, if he represents anybody. The estate of the deceased is not a thing *in esse* or *in posse.*

SIMRALL, C. J., delivered the opinion of the court.

In 1836, Miller Wilson bought from the heirs of A. M. Scott the lot in the city of Jackson, in dispute, and immediately went into the occupancy, improved the property, and resided upon it until 1838. At that time he sold to one Collins, who went into possession, and in August of that year received a deed from Scott's heirs. When Collins purchased, he executed to Wilson two notes for $1,500 each, and paid some cash. In 1839, Wilson and Collins rescinded. Wilson delivered up to Collins his two notes, cancelled a mortgage which he had made to Hughes and Finucane, sureties thereon, and refunded to Collins $1,880, the purchase-money which Collins had paid to him. Collins made the deed to John Long, on the consideration, as therein expressed, that Miller Wilson had delivered up to him (Collins) two notes of $1,500 each made by him, Hughes and Finucane, due respectively Jan. 1, 1839 and 1840; and also that Wilson had refunded to him $1,880, part of the purchase-money for the lot, for which a deed was made to him (Collins) by Jno. A. Scott and wife, and Farrar and wife, Aug. 31, 1838, — directly to him, as *purchaser from Wilson.* Immediately after this transaction Wilson resumed possession. It appears thus that on' the rescission the entire consideration passed from Wilson to Collins, and there would be no explanation of the motive of making the deed to Long, except for the testimony of Collins. In deposing to a business matter which occurred more than thirty years ago, we must make allowance for the influence of time on the memory, and can expect no more than careful and circumspect statements from a fair and credible witness. Collins does not recollect whether he conveyed to Wilson or Long, but does remember, that if made to Long, it was because he had advanced $1,000 of the money paid to him, and the conveyance was a security for the money.

Mizelle and Richardson claim under a purchase made from the heirs of Mrs. Long, John Long's widow. Mrs. Long bought in 1847, under a judgment against her husband. Both parties to the litigation trace title back to the heirs of A. M. Scott, deceased. The appellees claim that it has vested in them, because they are the vendees of the children and heirs both of Long and of his widow; and it is immaterial whether they deraign through the sheriff's deed to Mrs. Long, or through the heirs of her husband. Their vendors concentrate in themselves both rights.

It is uncontroverted that Wilson in his lifetime, and Green the executor under his will, and trustee for his natural children and their mother, have been in possession of the property long enough to toll the right of entry of Mizelle and Richardson, and bar this suit, provided that possession has been adverse to them and their vendors. What constitutes adverse possession has received very frequently the careful consideration of this court, on the authorities in this country and in England, and has been stated, we think, with accuracy ; and, as it has been generally accepted elsewhere. Some of the principles are these : Possession of land is presumptive of ownership. But possession, naked and unexplained, is supposed to be in subordination to the rightful title, and that without reference to the length of its continuance. Open and notorious possession under claim of right will, if held long enough, and continuously, ripen into a good legal title. That takes place when the possession has continued long enough to cut off the right of entry, and complete the bar of the Statute of Limitations. It does not matter how defective the claim or color may have been, if the disseisor entered under that right, and holds in hostility to the real owner, the latter must assert his title in due time, by entry or by action, or his right will be defeated. So the entry may be made and possession justified under color or claim of a parol as well as a written contract. *Hicks* v. *Steigleman,* 49 Miss. 377 ; *Dixon* v. *Cook,* 47 Miss. 220, 226 ; *Tush-hoyo-tubby* v. *Barr,* 45 Miss. 189, 191; *Huntington* v. *Allen,* 44 Miss. 654, 666; *Gladney* v. *Barton,* 51 Miss. 216, 219; *Ford* v. *Wilson,* 35 Miss. 490 ; *Alexander* v. *Polk,* 39 Miss. 737.

Since possession, however long continued, will not ripen into

right, unless characterized by an assertion of claim which is
adversary to the true owner; so, on the other hand, where the
entry in the first instance was permissive, with the license or
consent of the owner, it will remain of that character indefi-
nitely, unless, by open and unqualified acts of disclaimer, the
possessor assumes an attitude of hostility.

For the defendants in error, it is contended that, when Wil-
son resumed possession in 1839, he must be esteemed as enter-
ing by the permission of Long, to whom Collins had assigned
the legal title.   Collins gives this account of what occurred
(quoting his language) : " I did not sell the property to Long ;
never knew him in connection with the property in dispute,
until the time arrived for making the cancellation ; then it was
Mr. Long came in as the friend of Wilson, to aid him in re-
funding the money ; Long paid him (Collins) by check on the
Union Bank some money, think about $1,000.   On that occa�india
sion I made a quitclaim deed to the premises ; whether to
Wilson, or Long, as an indemnity for the money advanced by
him as the friend of Wilson, am unable to say ; but think it
quite likely it was to Long, for the purpose indicated ; for
about that time, before and since Wilson was embarrassed and
Long required security of some sort for his advances, Wilson
took immediate possession, and occupied until his death."

The motive that induced the rescission, as stated by Collins,
was that he had become dissatisfied with the title.   The agree-
ment was that Wilson should refund the consideration and
take back the title.   But when the papers were formally
passed, the deed was made to Long, who advanced for Wilson
$1,000, and wanted security.   This change of occupancy was
the result of the transaction with Collins, which put Wilson
in the attitude of a purchaser, with the legal title outstanding
in Long, as security for so much of the money as he had
advanced to pay Collins.   This advance was made by Long for
the accommodation of Wilson ; for Collins recites in his deed
to Long that Wilson had paid $1,880, all the cash which
Collins received.   Wilson stands towards Long as his mort-
gagor, the latter being his appointee to accept the title as
security for the loan.   This must be the true solution ; other-
wise we must place Wilson, who was comparatively poor, in

the category of giving $4,880 for the property to Collins, and at the same time selling it to Long for $1,000, and that, too, when his subsequent conduct shows that he rescinded with Collins for the purpose of occupying the premises as a residence.

Though the form of the arrangement was a deed absolute, the real relation was that Long held the legal title as security. We have two facts explanatory of the inception of the possession. It was surrendered by Collins to Wilson in virtue of their contract and upon the consideration paid. Long had no participation in the negotiation, and had no other connection with the affair, except that he loaned Wilson $1,000, and took the title for his indemnity.

In what relation did that place Wilson to Long ? It is easy to form a conception of the relative rights of the parties to a regular mortgage. The property is hypothecated for the debt. The legal title passes for a purpose only ; that is, in aid of the security. After condition broken, the mortgagee may enter by virtue of his title ; but he holds as mortgagee to apply the rents to the liquidation of his debt : his right of possession ceases when that has been accomplished. The mortgagor may regain both title and possession by paying the debt, or the mortgagee may raise his money by a foreclosure. Either party may lose his right by the bar of the Statute of Limitations. If the mortgagee does not enter, or bring his ejectment within the time limited, his right is cut off. So where the mortgagee has entered, the mortgagor must pay off his debt within the time, or claim an account, or he will be barred of his redemption. The time, in the absence of express statute, within which these remedies must be pursued, in analogy to the Statute of Limitations, is the time appointed to toll the right of entry under a legal title. If the mortgagor continues in possession, without recognition of the mortgagee's claim or debt, long enough to bar an ejectment, it will be presumed that his debt has been extinguished ; and there will be no remedy in a court of equity. A court of law counts time against the mortgagee from the date of the breach of condition, that being the origin of his right of entry. Such are the relations of the parties under a regular mortgage at the common law.

Our statutes have made some changes, which more definitely fix the rights of the parties. First, the mortgagor is the "owner of the legal title," except as against the mortgagee and his assigns, after breach of the condition. Second, when the mortgagee has taken possession, the mortgagor, or those claiming derivatively, must bring suit to redeem within ten years thereafter, unless there has been in the mean time a written acknowledgment of the mortgagor's right. Third, in all cases when the remedy at law to recover the debt is barred, the remedy in equity on the mortgage shall be also. These provisions were enacted in the Code of 1857, and are still in force.

If the arrangement between these parties had been a conveyance by Collins to Wilson, and a mortgage by the latter to Long, it is quite plain that Long, and those who claim by assignment or succession from him, would have been barred of remedy on the mortgage, at law or in equity. While an equitable mortgage, which is a deduction or result of the law from the transaction, stands upon a different footing, the rules which apply to a regular mortgage aid by way of analogy in the solution of the question before us. The deed was without defeasance; the equity was secret. Long was the holder of the legal title as security merely. It would have been a breach of confidence for him to have used it for any other purpose. Wilson was the equitable owner, and in that right received the possession. He was the purchaser from Collins, and made Long a depositary of the legal estate for a single purpose. In this aspect the case is analogous to *Russell* v. *Watt*, 41 Miss. 602, and *Holloway* v. *Ellis*, 25 Miss. 103. If Wilson had paid Long's debt, he could have compelled a surrender of the legal estate. Long did not take possession as bargainee, because he did not in reality stand in that relation to Collins. By the arrangement, he had no other interest than to make the property available to pay his debt.

Now, upon what principle of law or suggestion of reason shall the flow of time ultimately bar the mortgagee of all remedy, both at law and equity, on his security that does not apply to the holder of the legal title without written defeasance, if he suffers his debtor to remain in possession until the

right of entry is cut off? The possession in both instances must be referred to the equitable right. If the possession of the ordinary mortgagor is in a sense adversary, so is that of the equitable mortgagor.

In *Gladney* v. *Barton*, 51 Miss. 216, Davis purchased the land from Thornton, and, being unable to make the payments, sold to Absalom Barton, on the agreement that he should pay Thornton. The title, however, was to be made to William Barton, who was to hold it pending Davis's right of repurchase. Davis did not avail of this privilege. William Barton delivered the deed to his brother Absalom, who entered, made valuable improvements, and he and his heirs had continued to enjoy for twenty years. The court said, " William Barton was not the real purchaser ; . . . he advanced no money and incurred no obligation for it; he became the recipient of the legal title as a mere volunteer." The conclusion was that the long enjoyment expanded into the strength and dignity of legal right, and was paramount against William Barton and his heirs. The possession was referred to the equity as characterizing it.

The purchase of Mrs. Long, under the judgment against her husband, assigned his title to her, subject to all equities existing at the time in favor of third persons. *Walton* v. *Hargroves*, 42 Miss. 18, 26. This sale was made in 1847. She would occupy no better position than her husband ; but would take the title subject to all the equities upon it in the hands of the judgment debtor. Nor would Mrs. Long's situation be improved, if she were a *bona fide* purchaser for value directly from her husband without notice of Wilson's claim ; for she would be barred, and those claiming under her, unless there is some fact or facts which changed the rights and relations of the parties.

No light was thrown on the subject from 1839, the date of Wilson's rescission with Collins, until about 1846, when the conversation occurred between Wilson and A. Mizelle, one of the plaintiffs, in which Wilson admitted that Long's family had property, or would have property, in Jackson, of which they had no knowledge ; namely, the property on which he resided. We waive the competency of the

testimony, and of the witness for the present, but adhere to *Jacks* v. *Bridewell*, 51 Miss. 881.   The witness further stated, that, after Long's death, which occurred in 1846, he informed Mrs. Long of the conversation, when she said, Wilson claimed for his improvements.   It is important, in estimating the value of an admission, to consider the attending circumstances and the time.   The witness was deposing to a conversation which had occurred twenty-five or more years before, and was interested in the effect his testimony would have on the result of the suit.   We know what interest Long and Wilson had in the property.   It would not be just to construe the admission of Wilson as broader than a recognition of Long's right to the property as it was originally.   Mrs. Long seems to have understood the matter ; for, when Mizelle communicated what Wilson had said to her, she replied that Wilson claimed for his improvements.   Why claim for the improvements, unless Wilson considered that he had an interest in the property, to the extent of their value, and Long to the value of the mere ground ? that is, if Long took the property, he must pay Wilson all that it was worth over the $1,000 which Long had advanced for him.   Wilson's admission in 1846 was no more than that Long owned the property, just as the transaction of 1839 made him interested in it ; and it would be unsafe and unreasonable to give a larger import than that to his declaration.

But in 1849 Wilson devised all his property, real, personal and mixed.   If he had mentioned specifically the lot in dispute, it would have been an assertion of ownership, and would have made the case like that of *Kohlheim* v. *Harrison*, 34 Miss. 457 ; but it does amount to a declaration that he had real estate, and it is not shown that there was any other to which the devise could have applied except this property.   It is a circumstance, however, like his admission to Mizelle, to be considered.   The payments of taxes by Hemphill for two or three years after his marriage with Mrs. Long, were made, doubtless, in support of her title.

Our conclusion on the whole case is that Long was substantially equitable mortgagee, and that Wilson held possession as equitable mortgagor.   And that Long and Mrs. Long, purchaser under judgment against him, and her heirs, and the

plaintiffs, their assignees by quitclaim deed, having failed to assert right to the property from 1839 until 1873, have become barred of all remedy at law on the legal title.  That the possession of Wilson, in its inception in 1839 and during his life, must be referred to his claim as equitable owner; and, having been continued uninterruptedly by his executor and devisees in trust, in the testator's exclusive right since 1849, a period in all of thirty-five years, and by the executor and devisees of twenty-three years, the right of entry of those who claim under Long's title has been tolled.  It follows that the plaintiffs cannot recover.

*Judgment reversed and a new trial awarded.*