## Joseph E. Dean v. Elizabeth Tucker et al.

1. Adverse Possession. *Permissive-holding. Ejectment. Case in judgment.*
   In December, 1856, D. purchased a half-section of land, upon which were cabins, out-houses, a dwelling, and one hundred acres of which was cleared. The deed was made to D., and immediately afterward J., the son of D., recently married, entered upon and took possession of the land. He held it until 1869, when D., in consideration of love and affection, deeded to him the home place, containing a section, to which he moved; but he continued to exercise complete control over the half-section from which he had moved. An action of ejectment was brought in March, 1879, to recover of J. the half-section referred to. The plaintiffs claimed as the residuary devisees of D., who died in 1871; J. claimed under a parol gift, made at the time of his entry, and an alleged adverse possession of over twenty years. There was no direct proof as to the terms of his entry, whether under a parol gift or mere license from D. to occupy the land and use and enjoy the rents and profits. Until 1867 it was assessed to and the taxes were paid by D., but at this time he sent a message to J., saying that he was tired of paying taxes on land and have other people get the profits, and desired him to pay on this. After that, J. paid the taxes. Both J. and D. spoke at times of the land as J.'s, and in 1862 D. spoke to a witness of having given the land to J. In D.'s family it was spoken of as J.'s land. J. used and occupied it as his own, made the necessary improvements and repairs, and received the rents and profits. D., in listing his own lands, included this, and at times spoke of it as his land. When, in 1869, he made the deed of his home place to J., he was asked if he did not intend to include this land. He replied, "I do not." D. gave to each of his other children a half-section of land. In 1869 J. promised a grandson of D. to get him to deed the grandson this land, and said that D. had intended to do it anyway. *Held*, upon the facts above stated, that J. entered the land originally under a mere license from D. to use and occupy it, and enjoy its rents and profits, and that J. is not shown in any subsequent acts during D.'s lifetime to have asserted any claim to the land hostile to D.'s title.

---

Brief for plaintiff in error.

---

2. INSTRUCTION. *Hypothetical statement. Must embrace what.*

Where an instruction to the jury in a case embraces a hypothetical statement of the facts of the case, or of the facts which bear on any issue in the case, and the jury are told that if they believe the facts as stated to be true they are authorized to find in a particular way, the statement should be complete, and embrace all of the material facts of the case, or the facts pertinent to the particular issue which the evidence before them tends to prove.

3. ADVERSE POSSESSION. *Claim thereof. Evidence.*

In an action of ejectment, the defendant, in order to establish his adverse claim of the land in controversy, offered in evidence a record from the Chancery Court, in which that court, upon objections made by these plaintiffs to his final account as executor, decreed that he was not liable for the rent of this land. The evidence adduced showed that up to a period within less than ten years of the institution of the action the defendant held the land in subordination to the plaintiffs' title, and the record of the Chancery Court only tended to show an adverse claim within that period. *Held,* that such record was immaterial as evidence, and its rejection was not error.

4. EJECTMENT. *Plea under Code of 1871.*

Under the Code of 1871, a defendant in ejectment cannot plead specially the Statute of Limitations. He must plead the general issue, and under it may make any defence he has, either to the recovery of the land or mesne profits.

5. MESNE PROFITS. *How recovered. To what time. Recovery, when barred.*

Where land is held adversely, *assumpsit* for the use and occupation thereof will not lie. Trespass is the proper form of action for the recovery of mesne profits, and six years is the period fixed by the Statute of Limitations for bringing such action. A recovery for mesne profits should extend to the time of the trial of the action.

6. PRACTICE. *Supreme Court. Excessive verdict. Remittitur.*

This court, in considering the question of a motion for a new trial on the ground that the verdict is excessive, will consider the whole evidence presented by the record, determine the amount of excess, if any, and on plaintiff entering a *remittitur* for the excess, if there be any, render judgment for the amount of the verdict, less that found to be excessive.

ERROR to the Circuit Court of Marshall County.

Hon. J. W. C. WATSON, Judge.

The case is stated in the opinion of the court.

*Featherston & Harris,* for the plaintiff in error.

1. The verdict of the jury was against the evidence. The character of the appellant's entry upon and possession of the land can only be determined by the subsequent acts and declarations of himself and his father. The death of the father and the legal disability of plaintiff in error exclude all

evidence of what occurred at the time of the entry, and what they did and said can only be read in the light of their subsequent conduct. We insist that the entry was made and the adverse possession begun under a parol gift to plaintiff in error. He exercised over the place unlimited ownership and control from January, 1857, to March, 1879, when this action was commenced. For a period of twenty-two years — fourteen years during his father's lifetime and eight after his death — he was monarch of all he surveyed on the place. His father well knew it, made no protest against it, and asserted no claim to the property. On the contrary, he had declared that he had given the place to the plaintiff in error, often spoke of it as his, and at last sent him a message telling him that he must pay taxes on his (this) land. This will admit no other construction than that plaintiff in error held the land as a gift from his father.

If the entry of Joseph E. Dean on the land in controversy, and his possession thereof, began on the 1st of January, 1857, under a parol gift of it from his father, Joseph Dean, Sr., — and of this we think there is no doubt, in view of the testimony, — then his possession was adverse from the beginning, and the right of action of the defendants in error was barred at the end of ten years after the entry. An entry under a parol gift is an assertion of title in the occupant, and renders the possession adverse from the date of the entry. A parol gift of land may, by lapse of time and actual possession, ripen into a good and perfect title. *Davis* v. *Bowmar*, 55 Miss. 767; *Sumner* v. *Stephens*, 6 Metc. 337; *Syler* v. *Eckhart*, 1 Binn. 378; *School District* v. *Blakeslee*, 13 Conn. 227; *Moore* v. *Webb*, 2 B. Mon. 282; *Comins* v. *Comins*, 21 Conn. 413; *McGee* v. *McGee*, 37 Miss. 138; *La Frombois* v. *Jackson*, 8 Cow. 589; *McCall* v. *Neely*, 3 Watts, 72; *Ashley* v. *Ashley*, 4 Gray, 197.

The acts and declarations of the parties, Joseph Dean, Sr., and his son Joseph E., show that the entry was made and the possession begun under a parol gift, permissive in a popular

sense, but hostile in a legal sense, and constituting adverse possession under color of title. *Davis & Bowmar*, 55 Miss. 766, and authorities cited.

2. The court erred in refusing to give the fourteenth charge asked by the plaintiff in error. This charge lays down the well-established principle of law that the jury may infer from the acts of the occupant of the land, asserting the right of ownership over it, as well as from the acts of the party holding the legal title, and from the declarations of these parties, what was the character of the entry made by the occupant, and whether his possession was adverse and under color or claim of title. This charge was undoubtedly good law. *Davis v. Bomar*, 55 Miss. 766, and the list of authorities there cited.

3. The court erred again in excluding from the jury the records offered by the plaintiff in error, from the Chancery Court, to show that in 1874 the defendants in error filed their exceptions in the Chancery Court to the final account of the plaintiff in error as executor of his father's will, in which final account he had failed to charge himself with the rents of the land now in suit, and claimed it as his own. These exceptions were decided by the Chancery Court in favor of the plaintiff in error. The land in controversy was decreed to be the property of the plaintiff in error, and not the property of the estate of Joseph Dean, Sr., as insisted by the defendants in error. This evidence was certainly competent to show an act of ownership and a claim of title to the land by the plaintiff in error.

4. We call the attention of this court specially to the tenth charge given for the plaintiffs in the Circuit Court, in which the jury were instructed to find for the plaintiffs the rents from the death of Joseph Dean, Sr., in 1871, to the bringing of this action, on the twenty-fourth day of March, 1879. The plaintiffs could only recover the rents for three years if they recovered at all. The plea in this case was the general issue, the plea prescribed by the statute, and under that plea

all defences were required to be made.   Code 1871, sect. 1541.
No special plea setting up the statute was required.

*W. S. Featherston*, of counsel for the plaintiff in error,
argued the case orally.

*Watson & Smith*, for the defendants in error.

1. We submit that the court below did not err in excluding
the record of the Chancery Court, when offered by the defend-
ant to prove his acts of ownership; for, as the decree was
void for want of jurisdiction in the court that rendered it, it
could not be admitted in evidence against the plaintiffs for
any purpose whatever.   Besides, this claim of ownership arose
in a proceeding several years after the death of Joseph Dean,
Sr., a proceeding to which he was not and could not have
been a party, and which could not have had any bearing on
the relation between him and his son, the defendant.

2. Neither did the court err in refusing the fourteenth
charge asked by the defendant.   When analyzed, it in effect
says that if the jury believe from the evidence that the
defendant took possession of the land in January, 1857, and
held possession till the present time, occupying it as a resi-
dence for a part of the time, exercising rights of ownership
by clearing land, cultivating it, paying taxes, building and
repairing houses and fences, renting it out, and appropriating
the rents to his own use, and that Joseph Dean, Sr., was
advised of the possession, and that the land was spoken of by
him and defendant as the defendant's, then they might infer
from that state of facts that the possession was commenced
under claim or color of title, and was adverse.   The charge
was correctly refused, because, being an attempted summary
of the evidence, it did not embrace all of the testimony.
54 Miss. 584; 46 Miss. 581; 42 Miss. 134; 6 Geo. 165; 44
Miss. 778; 4 Geo. 389; 3 How. 383.

3. As late as 1869, the defendant, plaintiff in error here,
recognized his father's title to J. A. Harris, and at another
time, in 1869, when witness J. H. Alexander was drafting

the deed to the "home place." As soon as he received the deed to the "home place" he moved on it, near his father's, and attended to all his father's business for him. So far as shown by the testimony, plaintiff in error never set up any laim to the property until after his father's death, and the only thing developed by the evidence which savors in the least of an adverse holding is the cultivation of the land and making repairs. We submit, however, that "between those occupying parental and filial relations," as in this case, these circumstances are not convincing, because they are consistent with a mere permissive enjoyment of a usufructory possession. *Davis* v. *Bowmar*, 55 Miss. 766.

Hence, till 1871, when the death of Joseph Dean, Sr., occurred, one essential element of title by possession was wanting—to wit, the claim of ownership, ; for plaintiff in error did not then claim to be the owner, and unless the occupation was accompanied by the claim of ownership on the part of plaintiff in error, he could not acquire the title by possession, however long continued. *Davis* v. *Bowmar*, 55 Miss. 765; *Adams* v. *Guice*, 1 Geo. 397; *Snodgrass* v. *Andrews*, 1 Geo. 472. And unless the possession was adverse, no length of time would give any right or title to the land. *Rothschild* v. *Hatch*, 54 Miss. 561.

It is a "settled rule that the doctrine of adverse possession must be taken strictly, and not made out by inference, but by clear and positive proof." Every presumption of law from this testimony would be in favor of possession in subordination to the title of Joseph Dean, Sr., and we maintain that all charges for defendants in error which announce that principle in law are correct. 55 Miss. 765; 39 Miss. 755; 9 Johns. 167, 875; 10 Gratt. 310; 66 Mo. 33; 24 Wend. 587; 40 Cal. 33; 61 Me. 592; 2 Wall. 349; Tyler on Eject. 875.

4. We concede that it is settled in this State that the defence of the Statute of Limitations may be availed of under the plea of "not guilty." This plea is prescribed by the third section of the act of 1871 in relation to ejectment, and before the sub-

ject of " mesne profits " is alluded to. It can hardly be questioned that this plea is an answer to the demand for mesne profits, in so far as the right to them depends upon the right to recover in the main action, but we respectfully suggest to this court that it admits of grave doubt whether the defendant who seeks to limit a recovery of mesne profits by the plaintiff to three or six years must not do so by pleading the statute upon which he relies to that part of the action. We invite the especial attention of the court to this point. If, however, under the plea of " not guilty " the defence of the Statute of Limitations is available to the demand for mesne profits, is it not likewise true that it is a defence which must be made by some affirmative action on defendant's part — as, by objecting to testimony going back beyond six years, or by getting an instruction on the subject from the court. The Statute of Limitations is a personal privilege, to be pleaded or waived as the defendant chooses. In the case at bar, we maintain that it was waived. Had the point been raised in the court below by the defendant, we dare say the defendants in error would have been limited to *six*, not *three* years. But the testimony as to mesne profits beyond six years being unobjected to, and no charge being asked by defendant below, we naturally concluded that the defendant did not desire to rely upon the statute as a defence to the mesne profits, and the court gave the tenth instruction for plaintiff below, instructing the jury to find mesne profits for the whole period if they believed the plaintiff, from the evidence, entitled to recover. It is now too late to urge this objection. It should have been made in the court below.

·J. H. *Watson*, of counsel for the defendants in error, argued the case orally.

GEORGE, J., delivered the opinion of the court.

This was an action of ejectment brought by defendants in error against the plaintiff in error to recover a half-section of land. The defendants in error claimed under the will of

Joseph Dean, deceased, who died in the spring of 1871 ; the plaintiff in error claimed under an alleged parol gift from the same party, and an alleged adverse possession under the gift for over twenty years ; and the question in controversy is whether there was such parol gift, and whether the possession was adverse.    The evidence showed that on the seventeenth day of December, 1856, the testator, Joseph Dean, bought the land in controversy, taking a deed in his own name, and that in fourteen days thereafter — to wit, on the first day of the succeeding January — the plaintiff in error, who was the son of the testator, and had recently married, went into possession, and had retained possession ever since.    There is no positive evidence as to the terms on which plaintiff in error went into possession :  whether under a parol gift, or under a mere license from his father to use and occupy the land and enjoy the rents and profits.    At the time he went into possession there were cleared and in cultivation over one hundred acres of the tract, and there were also on the land a dwelling-house and other necessary out-houses and negro cabins.    This tract was situated within a mile of the plantation on which the father resided, and it is certain that, whatever was the nature of the claim of the plaintiff in error, his father acquiesced in and gave his consent to his occupation and user.    There is evidence that the son used the place as his own, and that he spoke of it as " his place," and there is also evidence that the father spoke of it as the son's, " Joe's place ; " and one witness, the overseer on the place, testifies that in 1862, when plaintiff in error was absent in the army, the father came on the place, and said he had given it to the son, but as he would not fix it up he wanted the witness to clear out some willows near the house. There was proof also that the son cleared some additional land and made some repairs on the place.    It was also in proof that the land was assessed to the father, who paid the taxes on it as late as 1867, as well as another farm which he had given to another son by parol gift, and that in that year he said to a grandson " that he wanted Joseph E. Dean [the

plaintiff in error] and Russell Dean [the other son] to go to paying taxes on their places ; that he was tired of paying taxes on land and have other people get the profits ;'' and that witness took a message to that effect from Joseph Dean (the father) to the said Russell Dean.   There was evidence also that the land was spoken of in the father's family as the plaintiff in error's.   On the other hand, there was evidence that the land was spoken of in the father's family as the property of the father, and he also spoke of it as his property.   Russell Dean, who was the oldest son of the father, and who had no interest in this controversy, testified that the father spoke of this place as '' Joe's place'' (meaning plaintiff in error), '' but in speaking generally of all his lands, and estimating the number of acres he owned or had owned in the county, he always included this place and the place he had given witness.''   It was also proven that on the 19th of November, 1869, Joseph Dean, Sr., the father, sent for one Alexander to write deeds to Russell Dean and Joseph E. Dean, and that Alexander wrote and Joseph Dean, Sr., executed a deed to Russell Dean for the half-section of land which his father had given him in 1851, by parol gift, as he claimed, and also a deed to Joseph E. Dean to the section of land on which the father lived.   It appears from the evidence that Russell Dean requested a deed for the place he was living on, fearing he might have some trouble about it after the father's death, and the father said that Russell Dean did not need a deed, as he had '' as good as a deed already,'' but that he would make a deed if Russell Dean preferred it.   When Alexander came, and was preparing the deed to Joseph E. Dean for the '' home place,'' he asked Joseph Dean, Sr., if he did not want embraced in the deed the land now in controversy, to which Joseph Dean, Sr., replied, '' No, sir; I do not.''   Joseph E. Dean was present and heard this conversation, and said nothing.   Russell Dean was also present, and testified that, whilst before this time he regarded the land in controversy as the property of Joseph E. Dean, he always regarded it afterward as the property of his father.   The deed

to Joseph E. Dean conveyed to him a section of land, being the " home place " of Joseph Dean, Sr. The deed recites that the conveyance was made " in consideration of the natural love and affection that I have for my son Joseph E. Dean, who has done me good service in attending to my business for many years, and who hereby promises to continue to attend to such business as I may need during my life, and then to take charge of his sister, Elizabeth Tucker, who is demented, and see that she is provided for." On the making of the deed, Joseph E. Dean removed from the place in controversy to the " home place," and built a dwelling on it; but he still continued to receive the rents and control the place from which he had removed.

The will of Joseph Dean, Sr., was read in evidence. It was dated in 1854, and it devised to Russell Dean the land on which he lived, and which was deeded to him in 1869 ; and it devised to Joseph E. Dean one-half of the " home place " at the death of the testator, and the other half at the death of Joseph E. Dean's mother.

It was also in evidence that in 1868 or 1869 Joseph E. Dean applied to a grandson of Joseph Dean, Sr., for some cabins which he had built on a tract of land adjoining the place in controversy, and promised, if the grandson would let him have them, that he (Joseph E. Dean) would see Joseph Dean, Sr., and try to get for the grandson the land in controversy ; that Joseph E. Dean told the grandson that it was his impression that his father, Joseph Dean, Sr., intended the place in controversy for the grandson ; that application was accordingly made by Joseph E. Dean to Joseph Dean, Sr., to give the place to the grandson, and that Joseph Dean objected, and in the conversation Joseph E. Dean said to Joseph Dean that he (Joseph Dean, Sr.) had promised Joseph E. Dean that he could have the land in controversy during the old man's lifetime.

Joseph Dean, Sr., died in the spring of 1871, and Joseph E. Dean still continuing in possession and refusing to account

for rents and profits to the devisees, this action was commenced in March, 1879.

The jury found a verdict for the plaintiffs below for the land and for rent for eight years. A motion for a new trial was made and overruled, and exceptions taken, and a writ of error prosecuted by Joseph E. Dean.

The plaintiff in error complains (1) that the verdict is not supported by the evidence; (2) that the court erred both in giving charges asked for by plaintiffs below and in refusing a charge asked for by the defendant; and (3) in rejecting competent evidence.

The questions, both of law and fact, involved in this case have been elaborately and ably argued, both at the bar and in briefs, by the counsel on both sides; and with the aid thus afforded, we will now proceed to examine the case and to state the conclusions at which we have arrived.

There is no positive and express testimony as to the exact nature of the possession of Joseph E. Dean at its commencement. The circumstances attending it, however, independent of the legal presumption that the possession was in subordination to the title, leave no doubt as to its true character. The son, Joseph E. Dean, had just married, and the land was evidently bought for his use and occupation. The purchase was made near the end of the year, just in time to commence preparations for a crop, and the possession taken under the purchase, and immediately after it, was by Joseph E. Dean, and the father never had any beneficial use of it. Under these circumstances, it is highly improbable, if the father intended that the son should have a title to or interest in the land independent of his will and possession, that he would not either have taken the deed in the son's name or made a direct conveyance of it himself. As the land was manifestly purchased on account of the son, it is impossible to suppose that in taking the deed the father's attention was not sharply directed to the point as to how the title should be made; and he must, therefore, have deliberately concluded to keep the

58 MISS. — 32

title and ownership in himself, and to allow the son only a permissive use in subordination to him. That the son knew this was the father's intention is made clear from the fact that, from the date of the purchase, up to and including the year 1867, at least, the land was assessed in the name of the father, who paid the taxes on it out of his own money. Under these circumstances, the facts so much relied on by the plaintiff in error — that Joseph E. Dean used and occupied the land as his own, made improvements and repairs, and took the rents and profits — do not even tend to show a claim on his part adverse to the father's title. All these facts are strictly in accord with a paramount and acknowledged title and ownership in the father. The father intended to assist and advance the son, to make provision for him on his marriage, and this object would have been frustrated if the son had been compelled to pay rents; and, having the free use of the land and its profits, it was but natural that he should be required to keep it in repair and make such improvements as were made in this case, inexpensive in their nature and necessary to a complete and perfect enjoyment of its use. That the father should, in 1867, have placed the additional burden on the son of paying the taxes is also in accordance with a permissive use and possession by the son; for it was but natural, as the father expressed it, that he who enjoyed the profits of the land should pay the legal charges on it. That the place was spoken of in the family, by the father, as Joseph E. Dean's place, is entitled to no weight, for there is nothing more common than to designate any species of property of the father by the name of the child who has a permissive use of it. Such expressions are used for the purpose of distinguishing one piece of property from another, and with no intention of making any assertion as to the ownership or title. This view is greatly strengthened when we consider other circumstances proved in the case. It is shown that Joseph E. Dean, in 1868 or 1869, expressly recognized the father's title and his own permissive use of the land. He offered, for a valuable consideration, to induce the

father to give the land to a grandson, stating that he always understood that to be the destination which the father intended for it. The will of the father, made in 1854, and in existence when Joseph E. Dean took possession of the place, and in which the " home place " is devised to him, and the deed made in 1869, by which the provisions of the will were carried out before the death of the father, show that the permanent advancement intended to be made for Joseph E. Dean was the gift of the " home place," and that his permissive use of the place in controversy was intended mainly as a temporary provision until he should come into the possession of his permanent patrimony. It is shown, also, that the father gave each of his children a half-section of land. To allow the claim of the plaintiff in error would result in his receiving as a donation one and a half sections; for it will be noted that the consideration of the deed to the " home place " is natural love and affection, the other circumstances mentioned not being stated as considerations, but rather as reasons for the father's love and affection. We conclude that the verdict of the jury was clearly right on the evidence, and that any other finding would have been unwarranted and clearly in opposition to the intention of Joseph Dean and of Joseph E. Dean during the life of the former.

The law in relation to the title and the adverse possession was very fully and clearly expressed to the jury by the charges given, and we see no objection to any of them so far as they relate to these questions.

It is insisted, however, that the court erred in refusing the fourteenth charge asked by the defendant. This charge was properly refused. Under all the facts proven, the jury were not warranted in inferring adverse possession from the hypothetical facts stated in the instruction, even if they believed they existed. But the charge was further objectionable because it told the jury they were warranted in inferring adverse possession for the whole term from the facts stated in the charge, if they believed they were proven; and yet the

charge omitted all reference to other facts which the evidence tended to establish, and which, if the jury believed were established, would have wholly destroyed the inference of adverse possession which they were told they might draw. The object of giving charges to a jury is to assist them in drawing correct conclusions from the evidence before them, and no charge should be given which does not legitimately tend to this end. When a charge embraces a hypothetical statement of the facts of the case, or the facts which bear on one of the issues in the case, and the jury are told that if they believe that the facts as there stated exist, they must, or they are authorized to find in a particular way, the statement should be complete, and should not omit all reference to other independent facts pertinent to that issue, to prove which there is evidence before them. It is true, where there is a conflict in the evidence as to the facts, a charge may present to the jury the hypothesis of either the one or the opposite view being correct; but that is not the case here. In this charge there is a specific enumeration of many particular facts, and the jury are told if they believe them they are warranted in drawing from them a particular conclusion; and yet there are other facts, to prove which there is also evidence, and which, if believed by them to exist, would destroy the effect of all the enumerated facts, and the jury's attention was not in any way called to these facts nor their influence explained to them. A fatal omission in the charge is the failure to allude to the evidence that in 1868 or 1869 Joseph E. Dean acknowledged to his father his permissive possession.

It is insisted, further, that the court erred in rejecting as evidence a record from the Chancery Court, in which that court, on objections made to the accounts of Joseph E. Dean as executor of his father's will, decided that he was not liable for the rents of the place in controversy. It is not insisted that this record is *res adjudicata*, but it is insisted that it should have been admitted as evidence of an adverse claim to the land made by the plaintiff in error. The answer to this view

is, that it is clearly shown there was no adverse possession during the lifetime of Joseph Dean, Sr., and that it was wholly immaterial whether the plaintiff in error asserted an adverse claim after his death, since it is not pretended that time enough elapsed after that event for the claim to ripen into a title.

The tenth charge given for the plaintiffs below, to the effect that if entitled to recover the land, they were also entitled to recover rents and mesne profits from the death of Joseph Dean, a period of eight years, is erroneous. The defendant in ejectment is not bound, nor even allowed, to plead specially the Statute of Limitations. Under the Code he can only plead not guilty, under which he can make every defence he has either to the recovery of the land or mesne profits. It is contended by the plaintiff in error that the period of limitation as to the rents is three years, as that is the time in which actions upon accounts are barred by the Code. We do not agree with this position. An action of *assumpsit* for use and occupation, where the land is held adversely, is not maintainable in this State. See *Scales* v. *Anderson,* 4 Cushm. 94.

The proper remedy in such a case is an action of trespass for mesne profits. A declaration in ejectment where mesne profits are claimed must be considered as embracing both ejectment for the land and trespass for mesne profits, and this latter action is barred only in six years. The jury, under the tenth charge, allowed rent for eight years, which, as we have seen, was wrong. But the charge complained of instructed the allowance of mesne profits to the commencement of the suit, when by law the plaintiffs were entitled to recover up to the time of the trial. A year intervened between the commencement of the suit and the trial, whereby the plaintiffs were entitled to recover in all for seven years. The jury allowed eight, but they allowed for two years which were barred, and under the charge failed to allow for one which the plaintiffs were clearly entitled to. The proof shows that the rent for each one of the years up to the trial was of the same value, and the jury, for the time they allowed rent, assessed it for each year at the same

sum.   On a motion for a new trial, when the complaint is
excess in the verdict, the court is authorized to consider the
whole evidence and do justice between the parties.   We there-
fore hold that the verdict is excessive only for one year's rent.
We reverse the judgment for that error ; and as the defendants
in error have signified their consent to remit the excess, we
direct judgment herein on the verdict for the possession of the
land and for $1,312.80 for rent, with interest from the date of
the judgment in the court below.