# NEAL *v.* NEWBURGER CO.

(Division B.   Sept. 30, 1929.   Suggestion of Error Overruled October 28, 1929.)

[123 So..861.   No. 27996.]

*Creekmore & Creekmore,* of Jackson, and *Stone & Stone,* of Coffeeville, for appellant.

694.

*Wilson, Gates & Armstrong,* of Memphis, Tenn., for appellees.

ANDERSON, J., delivered the opinion of the court.

Appellant filed her bill in the chancery court of Yalobusha county against appellees to recover of the latter damages, both actual and punitive, for the wrong and injury done appellant in tearing down and destroying her home in the town of Coffeeville in said county, and breaking up and otherwise injuring the furniture therein; and to establish and confirm appellant's title to lots 38 and 39 in the said town of Coffeeville (her home so destroyed being situated on the west part of lot 39). Appellees being nonresidents, and having property in Yalobusha county, the bill prayed for a foreign attachment against said property, and a sale of a sufficiency thereof to satisfy any decree for damages that might be rendered in favor of appellant. Appellees appeared and answered the bill. There was a trial on bill, answer, and proofs, resulting in a decree in appellant's favor, awarding her the sum of seven hundred dollars as actual damages for the destruction of her home and injury to the furniture therein, but denying her relief and dismissing her bill as to punitive damages; confirming her title as to the west part of lot 39, on which her home

was situated, but denying her relief as to the balance of lot 39, and all of lot 38. From that decree appellant prosecutes this appeal.

Appellant assigns and argues as error the action of the court in refusing to award punitive damages for the demolishing and removal of her residence, and injury to the furniture therein. The facts necessary to develop that question are without dispute. They are substantially as follows:

Elfa Riddick, a negro woman, was a family servant of the Newburgers while they lived in Coffeeville, and probably had been for many years. In January, 1889, the Newburgers, who were the predecessors in title of the appellees, made a deed to Elfa Riddick to "the west part of lot 39 on which the house is now standing and only this portion." Elfa Riddick died about twelve years before the trial of this cause, leaving a will in which she devised the home to her husband, Jack Riddick, during his natural life, and after his death to her daughter, the appellant, in fee. Jack Riddick died about two years before the trial of this cause. The appellant and her father and mother had occupied the house standing on the west part of lot 39 for more than forty years.

Appellees put in charge and control of their lands in Yalobusha county, consisting of both country and urban property, one Jones, as their agent and manager. The name of appellant's husband is Grant Neal. Jones investigated the deed records of Yalobusha county, and found that apparently the Newburgers were still the owners of all of lots 38 and 39. He was ignorant of the conveyance from the Newburgers to Elfa Riddick, and failed to find it on the deed records because it was not indexed. Jones decided, therefore, that the residence on the west part of lot 39 belonged to his principals. He conceived that it would be to the interest of his principals that the residence be torn down, and the material in it sold—that in that way lot 39 would have more value. He

thereupon went to the residence on the west part of lot 39, and found it locked, but learned that it was occupied by appellant and her husband, Grant Neal. At the time Grant Neal was in the town of Coffeeville, but appellant was in St. Louis, and had been for some time. Jones approached Grant Neal, and told him of his claim on behalf of his principals to the entire lot 39, and the residence thereon, and of his purpose to tear down and remove the latter. Jones broke the lock to the house and entered it. Appellant's husband remonstrated with him —begged him not to destroy the house until appellant could come home from St. Louis and produce her deed to the house. Jones replied that appellant was a tres-passer, without any right in the property, and he was going to put the furniture outside and tear down the house. Thereupon appellant's husband proceeded to employ an attorney to represent appellant. Appellant's attorney and her husband went to the residence and found that the roof had been torn off by Jones. The attorney succeeded in persuading the workmen engaged by Jones to tear down and remove the residence to discontinue the work until a conference could be had with Jones. A conference was thereupon had between them. Appellant's attorney warned Jones that the property belonged to appellant; that appellant and her predecessors in title had been in open, notorious, adverse possession of the property, claiming the title thereto, for more than thirty years. The attorney referred Jones to the record of the probate of the will of Elfa Riddick, devising this property to her husband and appellant. Jones replied that he knew the property belonged to his principals, and that he did not propose to recognize any claim of title by adverse possession. Appellant's attorney then suggested that Jones refrain from having the house torn down long enough to permit a suit to be brought to try the title to the property. Jones agreed to this, but shortly

thereafter changed his mind, and carried out his original purpose to tear down and remove the residence. In the negotiations Jones used offensive and insulting language toward appellant's husband.

After the conveyance to the west part of lot 39, on which the residence was situated, had been produced and brought to the attention of appellees, the latter recognized that appellant had good title to that part of the property, and in their answer they so conceded, and in addition admitted that their agent, Jones, had wrongfully torn down and removed the residence and damaged the furniture therein, for which act of Jones' they admitted responsibility; but averred that the wrongs so done appellant by Jones were without the knowledge or consent of appellees, and that, although Jones acted wrongfully, he acted in good faith.

We think, under the evidence, that the chancellor would have been justified in awarding appellant punitive damages for the wrongs and injuries done her by appellees, if in his judgment he had seen fit to do so, notwithstanding appellees' agent, Jones, honestly believed that the property belonged to appellees. Punitive damages may be recovered not only for a willful and intentional wrong, but for such gross and reckless negligence as is equivalent to such a wrong. A spirit of wantonness and recklessness is at war with good faith. An act done in such a spirit oftentimes is just as harmful as if prompted by malice. *Godfrey* v. *Meridian Light & Railway Co.,* 101 Miss. 565, 58 So. 534; *Yazoo & M. V. R. Co.* v. *Fletcher,* 100 Miss. 589, 56 So. 667; *Vicksburg Waterworks Co.* v. *Dutton,* 98 Miss. 209, 53 So. 537.

However, where the trier of the facts, whether it be judge or jury, in the exercise of discretion, has refused to allow punitive damages, such action is not reviewable on appeal, because punitive damages, under the law, are not given to the party injured as a matter of right; such damages are not awarded for the benefit of the par-

ticular party injured because of an absolute right in him
thereto, but upon the principle that they ''may have a
deterrent effect and protect the public against the repeti-
tion of similar offenses.'' Punitive damages are pun-
ishing damages, and are awarded to the injured party
as a reward for his public service in bringing the wrong-
doer to account. *Edward Hines* v. *Imperial Naval Stores
Co.,* 101 Miss. 802, 58 So. 650.

Appellant does not challenge the soundness of those
principles, but takes the position that the chancellor
never reached the point in his decision of exercising his
discretion as to whether he would or would not award
punitive damages, because in his decree he held that
under the evidence and the law the case was one in which
he would not be authorized to award punitive damages;
therefore, appellant argues that his act in that respect
was not a refusal to exercise his discretion as to whether
he would award punitive damages, but an error of law
alone; and being such, it is reviewable by this court.

Appellant concedes that this court, in a final decree
here, would not be authorized to award punitive damages;
nor would this court, on a reversal of the decree, be au-
thorized by law to direct the chancellor mandatorily to al-
low punitive damages; but argues that under the law and
the facts of the case, the decree should be reversed, and
the chancellor directed to allow punitive damages if,
in his discretion, he should think he ought to do so.

The chancellor found the controlling facts of the case
in the decree rendered. His finding of facts as to puni-
tive damages is in this language: ''The action of the
agent of the answering defendants was in violation of
the rights of the complainant, but the said agent in good
faith believed that his principals owned the said lot and
the said house, and did not believe that the complainant
owned the same at the time of his action, and the court
does not believe that the action of the said agent was
either willful or oppressive or malicious, nor was the

same authorized in any manner by the answering de-
fendants, or any one for them. The court does not be-
lieve that this is a proper case for the imposition of
punitive damages.''

It will be observed that in the first clause of the opin-
ion, the chancellor found that the action of appellee's
agent, Jones, was neither willful, oppressive, nor malici-
ous, but was done in good faith. Appellant argues that
the chancellor meant by that language that this was not
a case in which he would be authorized, in his discretion,
to award punitive damages. We do not so understand
that clause of the decree. We think a fair construction
of that language is that the chancellor meant to hold
that appellees' agent acted honestly; that he did not
intend to hold that, nevertheless, he did not act reck-
lessly and oppressively. The last clause in the opinion,
''The court does not believe that this is a proper case
for the imposition of punitive damages,'' bears out that
construction. The last clause standing alone undoubt-
edly would mean that the chancellor, under the law and
the facts of the case, in the exercise of his discretion, did
not see fit to award punitive damages. If the decree
rendered in the case can be justified from the record, it
must be done; it will be presumed, the contrary not ap-
pearing, that the chancellor found the facts correctly,
and applied the controlling principles of law. We cannot
say from the record in this cause that that was not done.

Appellant assigns as error the action of the court in
refusing to confirm her title to all of lots 38 and 39. Ap-
pellant was unable to show any paper title except as to
the west part of lot 39 occupied by the residence; to the
balance of the lots she claimed title by adverse posses-
sion of herself and her father and mother, continuing
for more than thirty years. The character of the pos-
session, as shown by the evidence, consisted in fencing
the property on all sides except the front, keeping the
fences in repair, renting out other parts of the lots for

pasture, storing wood on the lots, and wagons, plow tools, and using a part for a garden.

Appellant and her husband testified that that character of possession had continued in appellant, her father and mother, under claim of title, for more than thirty years. There was evidence, however, brought out on behalf of appellees, tending to show that the possession of appellant and her father and mother all along had been permissive, and not adverse to appellees. It was shown by the evidence that in 1889, shortly before Elfa Riddick bought of the Newburgers the west part of lot 39 on which the residence was situated, there were negotiations between them looking to a sale to her of *all* of lots 38 and 39, which were then owned by the Newburgers. A written contract was drawn up between the parties to that effect, but was never executed; this contract was introduced in evidence. Shortly afterward a conveyance was made by the Newburgers to the west part of lot 39 on which the residence was situated. In that deed, as shown above, it was expressly provided that only that part of lot 39 on which the residence was standing was conveyed; and quoting from the deed, "and only this portion."

Elfa Riddick was an old family servant of the Newburgers; they evidently had a kindly feeling, not only toward her, but apparently toward her daughter, for in 1926 the latter wrote to Joseph Newburger in Memphis, asking permission to remain on the property and use it, to which he responded, giving her permission to do so, and sending her a check for ten dollars as a gift.

The naked possession of land, unexplained, is presumed to be in subordination to the rightful title; and that is true without regard to the length of the possession. Presumptively the possession is in subservience to the title of the rightful owner. The burden of proof to establish title by adverse possession is upon the claim-

ant of such title. He must show by a preponderance of the evidence that his possession was adverse and open, and under a claim of right, and for the required length of time. *Adams* v. *Guice,* 30 Miss. 397; *Green* v. *Mizelle,* 54 Miss. 220; *Rothschild* v. *Hatch,* 54 Miss. 554; *Dean* v. *Tucker,* 58 Miss. 487; *Leavenworth* v. *Reeves,* 106 Miss. 722, 64 So. 660.

We think the evidence shows with little, if any, doubt that the possession of appellant and her predecessors in title to the lots involved began in subordination to the title of the Newburgers; that it was permissive, and not adverse and under claim of right. We think the relation existing between the parties, and the very atmosphere of the situation, shows that. The letter which appellant caused to be written to Joseph Newburger in 1926, asking permission to remain on the property and use it, is strongly persuasive that the possession of appellant and her predecessors in title had never been under claim of right. Appellant argues that that letter should not have been admitted in evidence, because, under the law, it could not operate as an estoppel against appellant to claim a perfect title already acquired by adverse possession. Appellant's position in that respect is sound as a legal principle; but the letter was competent and relevant evidence bearing on the issue as to whether appellant's possession and that of her predecessors in title had been under claim of right. Doubtless the court admitted it, and considered it for that purpose alone.

*Affirmed.*