FAIRLEY et al. v. HOWELL et al.

(Division B.    Dec. 1, 1930.)

[131 So. 109.    No. 28819.]

C. F. Hathorn and Currie & Currie, all of Hattiesburg, for appellants.

**F. M. Hunt**, of Hattiesburg, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On the 18th day of March, 1890, B. P. McLeod, then the undisputed record owner in fee simple of the land of which the following was a part, made, or rather attempted to make, a deed to appellant Watson Fairley, in the following words and figures:

"In consideration of the sum of forty dollars I convey and transfer to Watson Fairley all my right, title, claim and interest and demand in and to the following described land, to-wit: Commencing at the southeast corner of J. W. Gray's land and running north one hundred seventy-three and one-half feet, from thence east one hundred twenty-five feet and running south one hundred seventy-three and one-half feet, from thence west one hundred twenty-five feet to the point of beginning, being in southeast quarter of southeast quarter, section 4, township 4 north, range 13 west."

The testimony shows without dispute that at the time the deed was made the owner, McLeod, and the purchaser, Fairley, went upon the ground and there measured out the lot and placed stakes at the four corners, beginning at the southeast corner of the Gray land, which particular corner was then and there located, pointed out, and staked by the said McLeod, who was also the vendor of the land

then claimed and occupied by Gray and wife. The chancellor found, as recited in the decree, and the finding is amply supported by the evidence, that "the said B. P. McLeod intended to convey to said Watson Fairley the land described as commencing at a point five hundred five feet east of the southwest corner of the north one-half of southeast quarter of southeast quarter" of said section, township, and range.

The deed, although acknowledged, did not carry a legal acknowledgment, and therefore, although afterwards recorded, did not constitute constructive notice. The chancellor also found as recited in his decree, and the testimony supports the finding, that at the date aforesaid the lot in question was a part of the homestead of the said McLeod, although separated from the residence by what is now Main street, and the deed not being signed by the wife of the homesteader, it was inoperative as a present conveyance of any title. It is contended by appellant that the wife knew all about the transaction at the time, and had in fact requested her husband to make the deed to appellant as a gift, and had for all the succeeding years fully recognized the purported transfer as actual and valid; but we think those facts do not bear upon the deed so as to give it validity as a legal transfer, but only upon the issue of adverse possession.

On the latter issue the testimony shows that in the same year that Fairley purchased the lot, he sold the wood and such timber as remained on the lot to a negro by name of Grimes and his associates in the wood chopping business, and that in the following spring or summer, which was in the spring or summer of 1891, he permitted these same negroes on their application to him to fence up a substantial portion of the lot and to put it in cultivation, and that under that arrangement these negroes, who had a house near this lot, continued in the annual cultivation of said inclosed portion until 1899, when appellant Fairley conveyed, or attempted to con-

vey, the lot to McInnis. Appellant further testified that upon his sale to McInnis, who lived at Moss Point, he was requested by McInnis to continue to look after the property, and in pursuance of that authority he continued the permission to the negroes to remain in possession and in the cultivation of the lots in the manner aforesaid until about 1903 or 1904, when the negroes moved away, at which time further actual use and occupancy was abandoned until several years later. Fairley also paid the taxes assessed. The foregoing testimony appears to be uncontradicted, although we have searched the record for anything which would appear in substantial dispute thereof. On the contrary, there seems much to confirm and strengthen it.

On October 6, 1925, McInnis reconveyed the lot in question to the appellant Fairley. In the meantime, however, and on December 10, 1901, Mrs. Nancy McLeod, the widow and sole heir of B. P. McLeod, had made a deed to D. G. McLaurin of "all the Nancy McLeod land west of Main street in the north half of the southeast quarter of southeast quarter," said section, township, and range. Later and in December, 1905, McLaurin had this land and adjoining lots surveyed and platted into town lots, and on October 18, 1906, McLaurin sold this parcel under town lot descriptions to appellees, who on August 10, 1928, filed the bill in this case against appellants to settle said title. The chancellor found, and his finding is in accordance with the evidence, that there has been no exclusive or continued adverse possession by appellees sufficient to establish title in them; in other words, that appellees must stand solely on their record title. The evidence of adverse possession by appellees shows, at most, only what is commonly termed a "scrambling possession."

It is generally held by the great weight of authority that to prove title by adverse possession, or any essential element thereof, the evidence should be clear and fairly

convincing. And this is a correct statement of the rule where the claimant is a disseisor, entering without right. And in no case can such possession or an essential element be established by loose, uncertain, or conjectural evidence. But where the entry was under color, and in good faith under fair moral right, for an adequate price paid, and the legal title, at the beginning, had failed to vest only by reason of the oversight of some formal requirement in the execution of the conveyance, and where the vendor, and those holding rights through or under him, lived and continued to live in the immediate neighborhood of the premises and well knew at all times of the claim and of the bona fides of the origin thereof, as is the case here, then only the proof of such possession should be required as would sufficiently indicate to the vendors and those claiming through or under him that the vendee, or his vendee, is, by actual occupancy or user of the premises or of a substantial part thereof, persisting and continuing in reliance upon the validity of the transaction and upon the claim of title and ownership, and this without substantial interruption for the statutory period.

We think the practically undisputed evidence brings the case of appellant Fairley within the rule as thus stated, and the evidence being substantially undisputed we must apply the law to it, as we consider the law to be; with the result that the decree must be reversed as to the feature thus involved. We note the contention of appellees that there was no possession of the property when they bought it in 1906, and there being no constructive record notice to them, they should be protected as innocent purchasers for value without notice. That contention was expressly ruled upon adversely to appellees in Llowi et al. v. David, 134 Miss. 296, 98 So. 684.

The decree is therefore reversed, and the cause remanded with directions that a decree be entered in favor of appellant Watson Fairley for the lot herein men-

tioned, and that the several rights of the parties to the cause be readjusted in accordance with the title thus adjudged to Fairley.

Reversed and remanded.