## ANDERSON v. ANDERSON–TULLY CO.
### No. 13611.

United States Court of Appeals
Fifth Circuit.
May 8, 1952.

M. E. Ward, Vicksburg, Miss., for appellee.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a final decree of the United States District Court for the Southern District of Mississippi cancelling appellant's claims as a cloud on appellee's title to certain lands located in Issaquena County, Mississippi.

In its complaint Anderson-Tully Company, appellee, alleged that it was the owner in fee simple of described lands;[1] that W. C. Anderson, appellant, had erected a fence on a portion of the lands located in Sections 8 and 9 and was denying appellee access thereto; and that appellant's claim of title to these lands cast a cloud upon the appellee's title. In his answer, the appellant denied that his title to the lands, which he had for many years kept under fence, should be cancelled. Appellant also filed a counter-claim wherein he alleged adverse possession of the lands for a period of more than ten years and asked that the legal title be decreed in him.

A pre-trial conference was held and it was stipulated by and between the parties that appellant's claim of title to the described lands was based upon a claim of adverse possession except as to 7.81 acres thereof located in the Northwest corner of Lot 6 of Section 9, wherein appellant claimed title by both adverse possession and by record conveyance. The cause came on for trial and the court below found that Anderson-Tully Company was the owner of the record title to all of the lands in controversy; that appellant occupied the land by permission of the appellee; and that appellant had failed to show that his occupancy had been hostile, uninterrupted, and actual for a period of ten years. Accord-

M. B. Montgomery, Sr., Jackson, Miss., J. Wesley Miller, Rolling Fork, Miss., for appellant.

1. The land involved in controversy is described as follows: The South Half of Lot Two of Section 5; all of Section 8; Lot Four of Section 9, less and except two acres in the form of a square in the Northeast corner thereof; all of Lot Five and the Southwest diagonal half of Lots Six and Seven of Section 9 lying South and West of the line running from the Southeast corner of Lot Three of Section 9 in a Southeasterly direction to the Southwest corner of Section 10, all of said lands lying and being in Township 9 North, Range 9 West, Choctaw District, together with all accretions thereto.

ingly, a judgment was entered decreeing Anderson-Tully the owner of the lands in controversy, cancelling appellant's claims as a cloud upon appellee's title; and dismissing the counterclaim. This appeal followed.

Appellant's principal contention is that the trial court erred in refusing to hold that he was the owner of the land by reason of his continuous adverse possession thereof for a period of more than ten years. He argues that the case of adverse possession was established unless the possession was by permission; and that the evidence shows that appellant neither asked for nor received permission to erect the fence around the lands in controversy. On the other hand, the appellee contends that the trial court was correct in finding that the fence was erected after appellant applied for and received permission to build it; and that, even if the possession was adverse, there was no exclusive, consecutive, hostile uninterrupted adverse holding of the land for the statutory period of ten years.

■ ■ As to the trial court's finding that appellant occupied the land under permission from the appellee, we think that the evidence, together with all the reasonable inferences which may be drawn therefrom, was sufficient to support the trial judge's finding. Certainly we cannot say that his findings in this respect are clearly erroneous. But we need not rest our decision wholly on this ground. Whether the appellant had permission or not, we think the trial judge was clearly right in his finding that appellant failed to show that his occupancy had been hostile, uninterrupted, and actual for a period of ten years.

The evidence shows that in the year 1926, the appellant purchased fifty acres of land located on the north end of Lots 6 and 7 of Section 9. Thereafter, sometime around 1932, W. C. Anderson approached officers of the Anderson-Tully Company and requested permission to fence in a part of a large tract of land belonging to the company which adjoined W. C. Anderson's fifty acres on the south. Since it was the company's policy to permit its neighbors to use its idle timber lands for pasturing cattle and erecting hunting lodges, which it has done in some two hundred instances without any claim of title to the land by adverse possession being lodged against it, Mr. Tully, the company's president, told Allen, who was in charge of its lands, to give W. C. Anderson permission to fence the lands for pasture purposes. Thereafter, W. C. Anderson constructed a barbed wire fence and put cattle and livestock to pasture within the enclosure. He kept the fence in repair, erected posted signs, cut bermuda hay and sowed lespedeza on part of it. The record shows, however, that Allen was on the property at least once a year after the fence was erected and that Anderson furnished him with a key to the gate.

W. C. Anderson was a member of the Board of Supervisors of Issaquena County, Mississippi, from 1932 until 1940. Among his duties he was required by law to examine the tax rolls of the County to see that the taxes were properly assessed against the various landowners. During this period a controversy arose between the Board and Anderson-Tully Company concerning the Board's assessment of the company's lands. This assessment was compromised by an order of the Board and the company was assessed and paid taxes on 1,000 acres of land in Section 9, a large part of such acreage being the land here in controversy. However, in the year 1947 appellant had the Board of Supervisors assess to him approximately 230 acres previously assessed to Anderson-Tully. When this came to the company's attention, its agents approached appellant in an effort to get the matter straightened out and the present controversy then came out into the open.

In 1932 and 1933, John W. Norris, who was engaged in the logging business, cut timber off of the land in controversy for the account of Anderson-Tully Company. Norris hauled these logs through Section 9 to the Mississippi river bank and there loaded them aboard rafts. In 1940, W. E. Hauser, an employee of Anderson-Tully Company, surveyed all of the land from Arcadia Point to Newman Towhead, and thus established the line between the appellant's and the appellee's property. This line, which cut aross the area enclosed

within the fence, was identified for all to see by smoothing the bark of trees on the line and painting the trunks blue. Lumber concerns owning lands in that area customarily painted their lines in this manner and those engaged in the logging business recognized a line painted blue as an Anderson-Tully line. After Mr. Hauser finished running the blue line he asked the appellant if it suited him and appellant replied that, as far as he could see, it was correct save for the 7.81 acres located in the Northwest corner of Lot 6 of Section 9. In September and October, 1941, J. H. Hall, another logging contractor, cut timber for Anderson-Tully off of lands located to the east of those in question. This timber was hauled through the south gate of the fence and deposited on the landing at Arcadia Point for rafting down the Mississippi river. Hall testified that for a period of two months he maintained a logging camp for a crew of twelve to twenty men within the enclosure and that during that entire time the gate was never closed. He used a road drag to maintain a smooth road for the four trucks used in the operations and these trucks made three or four trips a day across the area. All of this was done without invitation or any interference whatever on the part of W. C. Anderson. In 1942 appellant sold to Dolly King timber within his fifty acres on the north end of Lots 6 and 7 of Section 9. At the time, Allen noticed that Dolly King's crew was approaching very close to the 7.81 acre triangular tract in Lot 6, which is located south of the blue line established by Hauser, and admonished appellant that the area south of the blue line belonged to Anderson-Tully and not to cut over the line. Appellant promised Allen that he would see about it.[2] In this connection, Dolly King testified that he used the blue line for a border line and that he did not need to be

told whose line it was because he knew the marks of all the lumber concerns and knew that it was an Anderson-Tully line. Finally, in 1948, O. E. Raines, a logging contractor working for Anderson-Tully, cut the fence and cut and hauled timber off of the lands in controversy.

The burden of proof was on appellant to prove his title by adverse possession by clear and convincing proof. Neal v. Newburger Co., 154 Miss. 691, 123 So. 861; Fairley v. Howell, 159 Miss. 668, 131 So. 109. We are of opinion that appellant failed to carry that burden. Beyond that, we think the evidence affirmatively shows that his possession was not adverse as that term is defined under Mississippi law. Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 16 So.2d 24; Neal v. Newburger Co., supra; Fairley v. Howell, supra. Moreover, the evidence discloses that there was no uninterrupted possession of the land for a period of ten years such as would give appellant title to the property by adverse possession. Hutto v. Thornton, 44 Miss. 166.

■■ Appellant's second point, that appellee failed to establish a good title to the 7.81 acre triangular tract of land located in the northwest corner of Lot 6 of Section 9, is no better taken. On July 15, 1920, E. T. R. Fox and his wife, Celia Fox, conveyed to Anderson-Tully Company as follows:

"All that part of Lots Six (6) and Seven (7), in Township Nine (9), Range Nine (9), West, situated south and west of a straight line drawn diagonally from the northwest corner of said Lot Six (6) to the southwest corner of Lot Five (5) in Section Ten (10), Township Nine (9), Range Nine (9) West, being the southwest corner of said Section Ten (10), together with all of the additions and accretions lawfully belonging to the lands hereinbe-

2. In connection with this conversation the appellant testified as follows:
"A. There wasn't no dispute about anything except the triangle. There was no dispute about that. Mr. Allen told me they were about to get over on him. I went down and saw it and told them to go ahead and cut it. I believe they cut it.

"Q. You went into town the next week and told Mr. Tully you owned all that land south of the blue line? A. No, I didn't tell him anything.
"Q. Who did you tell connected with Anderson-Tully that you owned all the land south of the blue line? A. I never told anybody."

fore described, and hereby conveyed. The lands hereinbefore referred to, and hereby conveyed, are further described as beginning at the southwest corner of said Lot Six (6), running thence north along the west line of said Lot (6) to the northwest corner of said Lot Six (6), running thence in a southeasterly direction to the southwest corner of said Lot Five, (5), in said Section Ten (10), being the southwest corner of said Section Ten (10), running thence south to the southeast corner of said Lot Seven (7), running thence along the south lines of said Lots Seven (7) and Six (6) to the southwest corner of said Lot Six (6), being the point of beginning, together with all of the additions and accretions to the said Lots Six (6) and Seven (7)."

In turn, the Fox title stems through a deed dated January 12, 1892, to S. Susman and S. P. Metzger from C. and E. Stockner, which contained the following description:

"* * * that part of lots Six and Seven commencing at the North West corner of lot Six and running South east to the corner of lot five in Section ten. Cutting off from the aforesaid lots by the line diagonally as above described from the West corner of lot Six in Section nine to the Southwest Corner of lot in Section ten being that part of lot six and seven fronting on the Mississippi River and containing one hundred and twenty acres more or less."

Appellant contends that the description is void for the reason that the original township plat of Township 9 North, Range 9 West, Issaquena County, Mississippi, fails to show that Section 10 was divided into sectional lots and, therefore, as the line ran southeasterly from the Northwest corner of Lot 6, Section 9, it found an indefinite and impossible terminus at the Southwest corner of Lot 5, Section 10. With reference to Section 10, it was stipulated by and between the parties that the original patent from the United States to the original patentee conveys the West half of the Southwest Quarter of Section 10, Township 9 North, Range 9 West; that from the time of the original patent until the time when the entire section comes down in one solid block, there are numerous references in the chain of Title to Section 10 and conveyances were made with reference to sectional lots from 1 to 8; and that the deed records of Issaquena County, Mississippi, disclose that the West half of the Southwest Quarter of Section 10 has been variously conveyed by such description and also under the description of Lot 5 of Section 10, Township 9 North, Range 9 West.

It was also stipulated that the original township plat of Township 9 North, Range 9 West, Issaquena County, Mississippi, does not show that Section 10 was divided into sectional lots. This was due to the fact that, unlike Section 9, Section 10 was not riparian to the river bank but was a full section of approximately 640 acres. St. George Richardson, a civil engineer of wide experience, testified that it was the common practice in that area, where the sections were divided into lots, to begin numbering at the East end of the North half of the Section, the numbers running 1, 2, 3, 4 from East to West, each containing 80 acres more or less; and lots 5, 6, 7, and 8 returning from west to east in the South half of the Section. Thus, if Section 10 had been divided into lots in the regular way, Lot 5 would have been the West Half of the Southwest Quarter of Section 10. Mr. Richardson testified that, as a surveyor, the description was entirely understandable and he would have no difficulty in locating the land. He further testified that if one used the West line of Lot 6 of Section 9 as one boundary and the South line of Lots 6 and 7 of Section 9 as another boundary, and made a straight diagonal line run from the Northwest corner of Lot 6 to the Southeast corner of the West Half of the Southwest Quarter of Section 10, which would have been Lot 5 of Section 10 if the regular method of numbering sectional lots had been followed, the description would embrace exactly 125-¾ acres. The deed dated August 8, 1848, from Bowie to Carnahan called for 125 acres more or less. For these reasons, we think the land was adequately described. Carmichael v. Foley, 1 How. 591; Beasley v. Beasley, 177 Miss.

522, 171 So. 680. In any event, it is clear that Anderson-Tully purchased the land in 1920 under a deed which fully describes the land conveyed. Thereafter it periodically cut timber therefrom, which was putting the land to its most valuable use as frequently as possible for a period of over ten years before the appellant constructed the fence in question.

Finally, appellant contends that, even if Anderson-Tully gave him permission to fence and pasture the lands, by posting the lands he exceeded his license and became a trespasser *ab initio*, and this started the running of the ten year statute of limitations. We find no merit in the contention. Mr. Tully testified that when they gave grazing rights to their neighbors they also gave them the right to post the lands. Even if it were applicable, which it is not, Section 2409 of the Mississippi Code of 1942 does not limit the right to post lands to the owner of the property.

The judgment was right and it should be and is affirmed.