HASTINGS et al. *v.* CALIFORNIA COMPANY, et al.

No. 41679        May 8, 1961        129 So. 2d 379

*Heidelberg, Woodliff, Castle & Franks,* Jackson, for appellants.

*Wells, Thomas & Wells,* Jackson, for appellee, The California Company.

*Welch, Gibbes & Graves,* Laurel, for appellees, Central Oil Company and others.

KYLE, J.

This case is before us on appeal by W. J. Hastings and others, complainants in the court below, from a decree of the Chancery Court of Smith County, dismissing with prejudice the original bill of complaint filed by the complainants against The Clafiornia Company, Central Oil Company, the Green Lumber Company and Michael J. Eubanks as defendants, seeking to establish the complainants' title to oil, gas and other mineral rights, as owners of the respective interests stated in said bill of complaint, in and to approximately 42.38 acres of land situated in Smith County, same being a fractional part of the SW¼, and a small fractional part of the SE¼, of Section 21, Township 2 North, Range 7 East, which is described by metes and bounds in the bill of complaint; and sustaining the prayer of the cross bill of Central Oil Company for the cancellation as clouds upon its title of claims of title by adverse possession made by the said W. J. Hastings to the mineral rights on said land, and cancelling as clouds upon its title a certain oil, gas and mineral lease executed by the said Hastings as lessor to John S. Clark, dated May 15, 1957, and certain mineral conveyances executed by the said W. J. Hastings and his assignees, purporting to convey nonparticipating royalty interests in said land to Evon A. Ford and Craig Castle, Trustee.

The record in this case shows that the title to the land in controversy became vested in Eastman, Gardiner & Company, a Delaware Corporation, on October 1, 1924. The record then shows the following conveyances affecting the record title to said land: On December 20, 1932, Eastman, Gardiner & Company executed a mineral deed conveying to Smith County Oil Company all oil, gas and mineral rights in said land and other lands in Smith

County. That deed was not filed for record, however, until July 24, 1940. On December 28, 1933, Eastman, Gardiner & Company conveyed said land along with other lands in Smith County to South Mississippi Land Company, excepting and reserving all oil, gas and mineral rights therein, which had been previously conveyed to Smith County Oil Company. On June 12, 1943, the Smith County Oil Company conveyed to Phillip S. Gardiner and others a ⅛ nonparticipating royalty interest in all oil, gas and minerals on said land and other lands in Smith County. On September 19, 1945, the South Mississippi Land Company conveyed said land and other lands in Smith County to the Green Lumber Company, excepting and reserving all oil, gas and mineral rights therein, which had been previously conveyed to Smith County Oil Company. On June 30, 1949, the Green Lumber Company conveyed to W. J. Hastings by special warranty deed 32 acres of said land, excepting and reserving from said conveyance, however, all of the oil, gas and other minerals which had been previously conveyed to Smith County Oil Company; and on October 7, 1950, the Green Lumber Company conveyed and quitclaimed to W. J. Hastings the same 32 acres of land, with a small additional acreage, excepting and reserving from said conveyance all of the oil, gas and other minerals which had been previously conveyed to Smith County Oil Company. On May 20, 1955, Central Oil Company (formerly known as Smith County Oil Company), executed an oil, gas and mineral lease on said land and other large tracts of land in Smith County to The California Company; and on May 11, 1956, the Central Oil Company executed to The California Company a correction oil, gas and mineral lease.

Thus, at the time of the purchase by The California Company of its oil, gas and mineral leases, the record title to the land and minerals in question was vested as follows: W. J. Hastings was the owner of the surface

estate; the Central Oil Company was the owner of the mineral estate; Phillip S. Gardiner and others were the owners of a nonparticipating royalty estate interest.

The bill of complaint in this cause was filed on October 7, 1957, by W. J. Hastings, John S. Clark, Evon A. Ford and Craig Castle, Trustee, as complainants, against The California Company, Central Oil Company, the Green Lumber Company and Michael J. Eubanks, as defendants. The bill was later dismissed as to Michael J. Eubanks.

The complainants alleged in their bill that W. J. Hastings was the owner of the surface rights and all of the oil, gas and other minerals in, on or under said lands, subject to an oil, gas and mineral lease executed by W. J. Hastings to John S. Clark on May 15, 1957, a copy of which was attached to the bill of complaint, and subject to nonparticipating royalty interests of $\frac{3}{4}$ of $\frac{1}{8}$th and $\frac{1}{4}$ of $\frac{1}{8}$th of all oil, gas or other minerals produced from said land, owned by Evon A. Ford and Craig Castle, Trustee, respectively, as shown by royalty deeds to which reference was made in the bill of complaint. The complainants further alleged that John S. Clark, Evon A. Ford, and Craig Castle, Trustee, had acquired their interests in said mineral rights from the complainant W. J. Hastings.

The complainants further alleged that the complainant W. J. Hastings purchased said land from Eastman, Gardiner & Company on or about January 1, 1927, for a valuable consideration, and moved himself and his family onto said lands, and claimed the same as his own; and that, although Eastman, Gardiner & Company neglected to deliver a deed to the complainant Hastings, said corporation at all times thereafter recognized complainant Hastings' ownership of said land. The complainants further alleged that, from January 1, 1927, until May 15, 1957, the date on which the complainant Hastings executed an oil, gas and mineral lease to the complainant

John S. Clark, the complainant Hastings remained in exclusive open, notorious, hostile, and adverse possession of said land, claiming to be the owner thereof as against all the world, including the defendants hereinabove named. The complainants further alleged that, although the defendant Central Oil Company had no right, title or interest in said land, the said defendant had executed a purported oil, gas and mineral lease to the defendant California Company, dated May 20, 1955, and a purported correction lease, dated May 11, 1956, both of which instruments had been duly recorded; that said two leases conveyed no interest whatsoever in said land to the defendant California Company; and the complainants were entitled to have said purported instruments cancelled as clouds upon their title.

The complainants further alleged that on or about July 30, 1949, and on or about October 7, 1950, the defendant Green Lumber Company, although it had no right, title or interest in said land, nevertheless, acting through its officers and agents, caused to be prepared and executed two deeds from the said Green Lumber Company to the complainant W. J. Hastings, purporting to convey to the said W. J. Hastings portions of said land, excepting and reserving all oil, gas and minerals previously conveyed to Smith County Oil Company, which said purported deeds were duly recorded; that said defendant knew that the complainant Hastings was the owner in fee simple of said lands without reservation or exception, and that said defendant fraudulently caused said deeds to be prepared and executed, and fraudulently caused the same to be filed for record, without the knowledge or consent of the complainant Hastings; that both of said instruments were null and void; and that the complainants were entitled to have the same cancelled of record.

The complainants prayed that a decree be entered adjudging the complainants to be the owners of the respective interests in said land set forth in said bill of com-

plaint; that the instruments under which the defendants were claiming an interest in said land be adjudged to be null and void and clouds upon the complainants' title; and that each of said instruments be cancelled of record; and that the defendants be enjoined from trespassing on said lands and exploring, testing or drilling for oil, gas or other minerals.

The defendants, Green Lumber Company and the Central Oil Company, filed their answer on January 20, 1958, and in their answer denied the material allegations of said bill of complaint. The defendants denied that the complainant Hastings was the owner of the oil, gas and minerals in and under said land, subject to nonparticipating royalty interests therein as set forth in the bill of complaint. The defendants denied that the complainant John S. Clark was the owner of a valid oil, gas and mineral lease on said land, and that Evon A. Ford and Craig Castle, Trustee, were the owners of nonparticipating royalty interests in said land. The defendants averred in their answer that the complainant Hastings had lived in a house on said land for a number of years with the permission of the true owners thereof; and the defendants denied that the complainant Hastings had acquired title to said land by adverse possession. The defendants denied that the complainant Hastings owned any interest whatsoever in said land other than the surface interest. The defendants averred in their answer that the Green Lumber Company executed and delivered to W. J. Hastings the two deeds dated July 30, 1949, and October 7, 1950, referred to in the bill of complaint, in settlement of a law suit involving the title to said land between the Green Lumber Company and the said W. J. Hastings, then pending in the chancery court, and that the said W. J. Hastings was bound by the terms of said settlement and estopped to claim title to the minerals on said land. The defendants incorporated in their answer a plea in abatement, in which they alleged that the defend-

ant Central Oil Company had acquired title to the oil, gas and mineral rights on said land by deed from Eastman, Gardiner & Company and that the Central Oil Company had thereafter conveyed a ⅛th nonparticipating royalty interest in said oil, gas and minerals to Phillip S. Gardiner and others by deed dated June 12, 1943, and that the grantees named in said deed and their successors in title were necessary parties to the suit. The defendant Central Oil Company attached to its answer a cross bill in which it asked for the cancellation as clouds upon its title of the several instruments under which the complainants claimed title to the oil, gas and mineral interests in said land.

The defendant California Company filed a separate answer, which in its main outline followed the averments and denials of the answer filed by the Green Lumber Company and the Central Oil Company. The California Company also incorporated in its answer a plea in abatement and a plea in bar similar to the pleadings filed by the Green Lumber Company and the Central Oil Company. The California Company also averred in its answer, that it was an innocent purchaser for value of the oil, gas and mineral lease referred to in the complainants' bill, without notice of the claim of the complainant Hastings.

The bill of complaint was later amended so as to make the grantees in the deed executed by Smith Oil Company to Phillip S. Gardiner and others on June 12, 1943, parties defendant.

The cause was heard by the chancellor in vacation upon the pleadings and the evidence offered on behalf of the respective parties, and a final decree was entered on July 9, 1959. The chancellor found that in the year 1927, or immediately prior thereto, Eastman, Gardiner & Company were the owners in fee simple of the land involved in this controversy; that, early in the year 1927, the complainant W. J. Hastings went into possession of the land

by permission of one Bob Carr, superintendent of the Eastman, Gardiner & Company's timber cutting operations, at the Cohay Camp, thinking that he (Hastings) owned the land; and that the complainant Hastings used the land thereafter for farming purposes and other purposes, with the exception of cutting timber, and with the exception of payment of taxes from 1927 to 1938; that the complainant and his family resided on the land for approximately 25 years; and that the complainants' possession was not interrupted by the defendants during that period of time. The chancellor found that Mr. Carr was only an agent of Eastman, Gardiner & Company, and not an officer, and that he had no authority to sell or convey or otherwise dispose of the property of the company, being merely in charge of the property as a superintendent. The chancellor found that the possession of the complainant was with the superintendent's permission and that the complainant's use of the land was not adverse to the defendants. The chancellor concluded from the above stated facts and other evidence that the complainant's use of the land was permissive as distinguished from adverse or hostile, and that the complainant had acquired no title by adverse possession.

In its final decree the court found that The California Company was a bona fide purchaser for value, without notice of the claims of the complainants, as to its oil, gas and mineral lease from Central Oil Company, dated May 20, 1955; that the possession of the complainant Hastings of the land in controversy was from its inception permissive and therefore not hostile or adverse to the holders of the record title to the land, and that the character of said possession did not change until some date after the execution and filing of record of the instrument severing the mineral estate from the surface estate; and that the complainants had failed under the law and the evidence to sustain the allegations of their bill of complaint. The court found that the cross-complainants, Central Oil

Company, had sustained the averments of its cross bill and that the prayer for relief under the cross bill should be granted. It was therefore ordered that the bill of complaint of W. J. Hastings, John S. Clark, Evon A. Ford and Craig Castle, Trustee, as amended, be dismissed with prejudice, and that the prayer of the cross bill of the cross-complainant, Central Oil Company, be granted.

The appellants in this case have argued two points as grounds for reversal of the decree of the lower court: (1) That the Chancery Court of Smith County correctly decided the factual situation, but erred in holding that the possession exercised by W. J. Hastings was "permissive" rather than "adverse", and by placing by implication the burden of proof upon the complainants; and (2) that the possession and control exercised by W. J. Hastings over the land in controversy, was sufficient, when considered with other factors, to place any prospective purchaser upon notice that W. J. Hastings claimed title to the land surface and mineral estate by reason of adverse possession, and that the chancery court erred in holding that The California Company was a bona fide purchaser for value without notice of the Hastings' claim to the oil, gas and other minerals in and on the lands in controversy.

We think there is ample evidence in the record to support the chancellor's finding that Hastings entered into possession of the land during the early part of 1927 by permission of Mr. Carr, the superintendent of logging operations at the Cohay Camp, and that the character of said possession did not change until sometime after the execution and filing for record of the instrument severing the mineral estate from the surface estate.

Hastings was in feeble health at the time of the hearing before the chancellor, and did not appear and testify as a witness in the case. But in answer to interrogatories filed by the defendants prior to the hearing, Hastings stated that he purchased the land which he claimed to

own from Eastman, Gardiner & Company during the last week of December 1926; that Mr. Carr agreed to sell him 50 acres of land for $262.50 which was to be withheld by Mr. Carr from his weekly pay; and that he paid for the land by permitting unspecified amounts to be deducted each week from his pay check until the full amount of the purchase price was paid. Hastings stated that he executed no note or written instrument evidencing the indebtedness. He stated that Mr. Carr promised to make him a deed, but he did not want to deliver the deed to him until after Eastman-Gardiner had closed the camp. Hastings stated that he moved on the land about the first week in January 1927, and continued to live there until about five years before the date of the trial, when he got sick and had to live with his daughter and his grand-children. Hastings stated that he maintained the fences, cultivated the land and cut timber from the land during the time he lived on the land, and that he paid the taxes on the land for the year 1939 and thereafter. He stated that Mr. Carr had agreed for the company to pay the taxes on the land until the full amount of the purchase price was paid and the company gave him a deed to the land.

The strongest proof offered on behalf of the appellants to establish Hastings' claim of title by adverse possession, was the testimony of Morgan Rodriguez, who testified that he went to work for Eastman, Gardiner & Company in 1911 and worked for the company about 30 years; that he knew that members of the Hastings' family were farming on the land after they moved on the place and that they were making claim to the land. He stated that he was present at one time - sometime between 1926 and 1930, when a conversation took place between Mr. Bob Carr, manager for Eastman, Gardiner & Company, and Mr. Hastings with reference to the purchase of the land. The conversation took place in the office of Eastman, Gardiner & Company. In describing that

conversation Rodriguez said: ''I worked at night and came in there to turn in the time about 8:30 in the morning * * *. Mr. Carr called 'Mr. Rodriguez, come here I want you to hear a conversation between me and Mr. Hastings.' And I walked in there and sat down. And he said 'and here is what I have to say to Mr. Hastings. I want you to know and to understand that if I was to happen to die before I have time to make him this deed he would - that he would have a witness to that fact, that the land belonged to him.' '' Rodriguez stated that nothing was said that morning concerning the payment for the land. — ''No, sir, wasn't anything said about any payment on the land.'' Rodriguez stated that the fences on the land at the time of the trial were substantially the same as the fences that were there in 1924, and that Mr. Hastings and his family had built some more fences on the south side of the place.

Several other witnesses testified that Mr. Hastings remained in possession of the land from 1927 until after his wife's death in 1952, and that the land was generally referred to in the community as the W. J. Hastings place.

Against Hastings' testimony and that of Morgan Rodriguez, the defendants offered the testimony of several witnesses who had been acquainted with the land during the entire period of Hastings' occupancy of the land, and whose testimony tended to show that Hastings possession of the land prior to 1948 was permissive and not a possession under claim of ownership.

Hascal Massey testified that he was employed as payroll clerk and assistant paymaster of Eastman-Gardiner in the Cohay Camp from 1925 to 1931, and that Mr. Hastings, to his knowledge, was not an employee of the company during that time; and that Mr. Hastings hauled wood into the camp and sold it to the people living in the camp. Hascal stated that he knew Mr. Bob Carr, who was superintendent of woods operations for Eastman-Gardiner; that Mr. Carr's office was called the pay-

roll office; and that he never knew of Mr. Carr signing conveyances of land for the company.

Brodie Crumpton testified that he was first employed by Eastman-Gardiner in 1922 as a surveyor, and that he looked after the lands and timber for the company when the Cohay Camp was established; that he had a plat of the company's property, and the land occupied by Mr. Hastings was included in that map; that Mr. Hastings told him that he had the refusal to buy the land when the company abandoned the camp, and that he was going to stay there until he could buy it. He stated that Mr. Hastings did not offer to buy the land, but he said he wanted to buy it as soon as he could. Crumpton stated that, after Eastman-Gardiner went out of business, he worked for South Mississippi Land Company and Green Lumber Company, surveying and looking after their lands and the sales of oil and timber, and that the land occupied by Mr. Hastings was considered by him and the company as company-owned land; that on one occasion, about 1941, he saw Mr. Hastings cutting firewood, and he asked him not to cut the timber, and Mr. Hastings stopped; that Mr. Hastings started cutting the timber in 1948, and the Green Lumber Company enjoined him from cutting the timber. Crumpton stated that the Green Lumber Company's suit for an injunction was finally settled by the company conveying to Hastings the 42 acres of land described in the bill of complaint in this cause, excepting, however, the oil, gas and other minerals, which were owned by Central Oil Company; that Hastings was not satisfied with the first deed which conveyed approximately 32 acres, and the company later executed to him a second deed, conveying a small additional acreage, excepting, however, the oil, gas and other minerals, as in the first deed. Crumpton stated that, during the discussions which led up to the settlement, Mr. Hastings was told that he did not get the minerals, and Mr.

Hastings said that he understood "that the minerals did not go with it."

R. S. Tullos testified that he was a lawyer and lived at Raleigh; that he had represented the Green Lumber Company in years gone by; that he recalled the suit filed by Green Lumber Company against Mr. Hastings in 1948; that after the injunction process had been served on him Mr. Hastings came to his office to talk to him about the suit; and that Mr. Hastings said to him that he knew he did not own the land, but Mr. Carr had promised it to him, and that his wife had gotten hurt and he needed a little money and he did not think there was anything wrong with cutting the timber and selling it and getting something for his wife, since Mr. Carr had said that he was going to let him have the land. Tullos stated that, when court met, the parties and their attorneys went back into the witness room and talked the matter over; that Brodie Crumpton and Mr. Hastings, and R. C. Russell and L. D. Pittman, Mr. Hastings' attorneys, were present; and that, after a discussion, the parties reached an agreement which appeared to be satisfactory to Mr. Hastings. Mr. Crumpton agreed to go to Laurel to see about getting the deed to the additional acreage, and the second deed placed of record represented the agreement arrived at.

Frank Maddox testified he had known Mr. Hastings since 1923, and that he recalled a conversation which took place in his presence between Mr. Bob Carr and Mr. Hastings in Mr. Carr's office in 1926, while Mr. Hastings was living in a company-owned house near Salem Church. Mr. Carr wanted the house for the night hostler, and he told Mr. Hastings that he wanted him to move out of the house. Mr. Hastings then asked Mr. Carr about moving into the little house next door to the creek; and Mr. Carr told Mr. Hastings that, if he moved down there, he could live there, "in case that you do not give the company no trouble and do not abuse the company's land and tim-

ber." Mrs. O. T. Buffington, Hastings' own daughter, testified that her father cut wood and sold it to different people at the Cohay Camp, and that he got Mr. Carr's permission to cut the wood.

Vera Sanderford, a nurse at the Brandon Clinic, testified that she had lived in the Cohay Camp and had known Mr. Hastings since she was 13 years old; that she was familiar with the land involved in this suit; and that she recalled a conversation which took place in her presence between Mr. Will Magee and Mr. Hastings on the front porch of her mother's home in 1943. Mr. Hastings had heard that Mr. Magee was planning to buy the Hastings place and another tract of land from the lumber company; and Mr. Hastings asked Mr. Magee whether he had closed the deal. Mr. Magee told him that he had not, and Mr. Hastings then asked Mr. Magee whether, if he bought the land, he would buy "the improvements on there." Mr. Magee told Mr. Hastings that he would, if Mr. Hastings would sell the improvements at a reasonable price. Mr. Hastings said nothing at that time about claiming the land. The witness stated that Mr. Magee died a short time thereafter, and nothing was done about the matter.

In the case of Davis v. Bowmar, Executor, et al., (1878), 55 Miss. 671, the Court said: "To acquire title by possession two things must occur, to-wit, an occupation, actual or constructive, and a claim of ownership. Neither is effectual without the other. No continuance of occupation, no matter how long protracted, will avail unless accompanied by claim of title; and every presumption of law is that the occupant holds in subordination and not adversely, to the true owner. Not only does the law presume that he who has entered without title has done so in recognition of, and subordination to, the title of the owner, but, having affixed this prima facie presumption to his entry, it will not allow him to convert

it into an adverse one except by acts which plainly demonstrate its hostile character.''

In Neal v. Newburger, 154 Miss. 691, 123 So. 861, the facts were somewhat similar to the facts in this case, and in its opinion in that case the Court said:

''The naked possession of land, unexplained, is presumed to be in subordination to the rightful title; and that is true without regard to the length of the possession. Presumptively the possession is in subservience to the title of the rightful owner. The burden of proof to establish title by adverse possession is upon the claimant of such title. He must show by a preponderance of the evidence that his possession was adverse and open, and under a claim of right, and for the required length of time. Adams v. Guice, 30 Miss. 397; Green v. Mizelle, 54 Miss. 220; Rothschild v. Hatch, 54 Miss. 554; Dean v. Tucker, 58 Miss. 487; Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660.

''We think the evidence shows with little, if any, doubt that the possession of appellant and her predecessors in title to the lots involved began in subordination to the title of the Newburgers; that it was permissive, and not adverse and under claim of right.''

This Court has held in many cases that the findings of the chancellor on disputed questions of fact will not be disturbed on appeal, if such findings are supported by substantial evidence and are not manifestly wrong. We think that it cannot be said in this case that the chancellor's findings of facts are not supported by substantial evidence or are manifestly wrong.

In view of the conclusion that we have reached that the chancellor was justified in his finding that the complainant Hastings had acquired no title to the land by adverse possession, it necessarily follows that Hastings had no title of any kind to the oil, gas and minerals in, on or under the land, and neither he nor his grantees had a

right to challenge the validity of the oil, gas and mineral lease owned by The California Company.

We find no reversible error in the record and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C.J.*, and *Ethridge, Gillespie* and *McElroy, JJ.*, concur.